**R.B. WILLIAMS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Aug. 13, 1982.

Discretionary Review Denied Oct. 28, 1982.

Jack Emory Farley, Public Advocate, Mark Posnansky, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for appellee.

Before HOGGE, LESTER and McDONALD, JJ.

McDONALD, Judge:

R.B. Williams appeals his jury conviction of first-degree robbery wherein his punishment was fixed at ten years to serve in the penitentiary.

The facts of the case are not complicated. On August 24, 1979, at about 5:00 a.m., McKinley Townsley, an employee, opened the Downs' Cleaners in Hopkinsville. Townsley saw an intruder in the shop whom he recognized as a man called "Skeeter,"

later identified as the appellant, R.B. Williams. He observed that "Skeeter" had clothes in his possession and that his hand was bleeding.

Upon being confronted by Townsley inside the shop, Williams ran out the back door with the clothes but later discarded them in a dumpster during his flight. Townsley gave chase and when he caught up with Williams, Williams drew a pocketknife. Townsley then retreated and backtracked, retrieved the clothes from the dumpster, went back to the store and called the police.

Williams' defense was that he spent the night of August 24th and morning of the 25th with Vanessa Thomas, and she so testified as an alibi witness. The dates became confused for Williams and his alibi witness. According to the dates established by them, Williams would have spent the morning of the crime at home with his mother. His mother, however, did not testify in the case. Regardless, Williams maintained his innocence and alleged that Townsley had him confused with someone else. It is noted that the police found a window to the cleaners broken with blood on the windowpane.

Appellant argues that the trial court erred when it failed to grant his motion for a directed verdict of acquittal at the close of the Commonwealth's proof, and then again at the close of all of the proof.

The statute upon which appellant's conviction was based reads as follows:

K.R.S. 515.020, Robbery in the first degree.—(1) A person is guilty of robbery in the first degree when, *in the course of committing theft,* he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

(2) Robbery in the first degree is a Class B felony. [Emphasis ours.]

Analyzing the facts along with the statute, Williams argues that the theft of the clothes had been completed and therefore terminated prior to the time the knife was displayed. He argues also that a pocketknife is not considered a deadly weapon under K.R.S. 500.080(4)(b), and that the prosecution failed to prove that Williams used or threatened the immediate use of the knife, as a dangerous instrument, while in the course of committing theft. Therefore, he maintains that he could not be found guilty of robbery in the first degree or second degree as was instructed by the court. At best, it is argued, Williams could only be guilty of either wanton endangerment or terroristic threatening at the point in time when he pulled the knife.

To constitute robbery, at common law and in Kentucky until 1975, force or violence or the threat thereof had to come before or run concurrent with the taking or attempted taking of property.

In *Montgomery v. Commonwealth,* Ky. 346 S.W.2d 479 (1961), it was argued that no armed robbery occurred because a knife was displayed after the "taking" of a box which contained the money. The appellant in that case reasoned that a grand larceny had been completed just prior to the display of the knife. The court reasoned otherwise saying, "The acts originated and occurred in the same period of time, that is to say, were contemporaneous." *Id.* at 481. There, Montgomery said to the victim after the box was taken, "If you move, I'll cut your g___ d___ throat," and he had a small knife opened in his hand. *Id.* at 480.

In 1975, K.R.S. 515.020 became effective; and in essence the statute says that if force or the threat of force is used, then a robbery has been committed. It is the Commonwealth's argument that the statutory clause, "in the course of committing theft," encompassed Williams' flight from the scene, and that the theft was not complete because Williams was still in the escape stage. The Commonwealth cites the *Kentucky Penal Code,* Final Draft (L.R.C.1971), Commentary to Section 1600(iii) at 180:

Sections 1605 and 1606 (K.R.S. 515.020 and K.R.S. 515.030) change this law by expanding robbery to include all situations involving the use of force "in the course of committing theft." As indicated above, this is intended to extend all the way from the attempt stage of theft through the escape stage.

■ While the commentary to the *Code* is not binding upon us under the authority of *Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219 (1977), we are entitled to use the commentary as an aid in construing the provisions of the statute pursuant to K.R.S. 500.100. Further, K.R.S. 500.030 mandates that "All provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law."

■ Therefore, we conclude that robbery in the first degree was committed. The fact that force was used sometime after and some distance from the *taking* is only incidental. The force used was in the course of committing the theft because it happened during the escape stage. We construe the fair import of the term "in the course of committing theft" to include the time, place and circumstances surrounding a theft or attempted theft. This encompasses the escape stage. We believe the fair import of the meaning of "escape stage" to be all steps or events in the process of escape which would fall within the active or continuous pursuit of the criminal actor. *See* K. Brickey, *Kentucky Criminal Law,* § 15.02 (1974). We find no error of the trial court in overruling the motions for directed verdict of acquittal.

■ The other claim of error by Williams is that the trial court made a prejudicial remark in its response to a question propounded by one of the jurors. The record shows that the jury was brought into open court after a juror requested a question to be answered. The written question by the juror was: "Mother, where is she?" Judge Soyars responded: "Ladies and Gentlemen, I have your question here. I can't answer the question for I don't know why she didn't come in and testify. She was not here. Does that answer your question?" The juror responded: "Yes, sir."

The significance of this inquiry resulted from the confusion of Williams and his alibi witness, Vanessa Thomas, as to which date the crime occurred. Holding Williams to his testimony, he would have been home with his mother instead of being with Vanessa Thomas at the time the crime occurred. It is quite evident the juror wanted to know why Williams' mother didn't come to testify on his behalf. However, we cannot see where the court's answer invaded the province of the jury as factfinders, or could be construed as a comment upon the evidence. We see no error in this regard.

The judgment of conviction is affirmed.

All concur.