Ronnie L. BOWLING, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–SC–1035–MR.

Supreme Court of Kentucky.

April 24, 1997.

Rehearing Denied June 19, 1997.

Donna Boyce, Assistant Public Advocate, Department of Public Advocacy, Thomas M. Ransdell, Assistant Public Advocate, Kentucky Capital Litigation Resource Center, Frankfort, for appellant.

A.B. Chandler, III, Attorney General, Frankfort, David E. Spenard, Assistant Attorney General, Ian G. Sonego, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

GRAVES, Justice.

### FACTS:

This is a direct appeal of a judgment of the Laurel Circuit Court which sentenced appellant, Ronnie Lee Bowling, to death on two counts of murder and to four twenty-year terms of imprisonment, to run consecutively for a total of eighty years, on two counts of first degree robbery and two counts of first degree burglary. On appeal, the appellant raises forty-four assignments of alleged error as well as twenty seven sub-issues, many of which were not preserved for review pursuant to RCr 9.22 or 9.54. We have carefully reviewed all issues both preserved and un-preserved and for the reasons set forth below, we affirm the judgment of conviction and the sentence imposed.

Early in the morning of January 20, 1989, and while he was working alone, Ronald L. Smith received six .38 caliber gunshot wounds—three to the back of his head, two to his mid-back near the spine, and one to the upper left side of his chest near the armpit. Early in the morning of February 22, 1989, and while he was working alone, Marvin Hensley received six .38 caliber gunshot wounds—three to the back of his head, one behind his right ear, one to the upper back of the neck, and one to his right hand. When questioned about the incidents, the appellant denied owning a handgun. However, his former wife, Ora Lee Issacs, testified that he had purchased the handgun, and she identified both the handgun and the holster seized from appellant's trailer as owned by the appellant. The police also found a box of .38 caliber shells when they searched the appellant's home.

On March 17, 1989, the Laurel County grand jury returned a six-count indictment against the appellant. He was charged with murder by shooting Ronald L. Smith with a pistol, first degree burglary by unlawfully entering the Jones Chevron Station and killing Ronald L. Smith, and first degree robbery by shooting and killing Ronald L. Smith in the course of committing a theft at the Jones Chevron Station, committed on or about January 20, 1989. Also, he was charged with murder by shooting Marvin Hensley with a pistol, first degree burglary by unlawfully entering the Hensley Spur Station building and killing Marvin Hensley, first degree robbery by shooting and killing Marvin Hensley with a pistol while in the course of committing a theft at the Hensley Spur Station, committed on or about February 22, 1989. The appellant was tried in September and October 1992 and sentenced in December 1992. Further facts will be discussed as necessary in the development of this opinion.

We first address the issues presented at oral argument and then proceed to other issues raised in the briefs. The issues argued orally were change of venue, challenges

to jurors, evidence of other crimes, evidence of the victims' good character, irregularity in jury composition, informant's background, and the admission of so called "junk science." Also, in accordance with the law in death penalty cases, we will address the proportionality of the sentence.

Since the death penalty has been imposed, we have reviewed all allegations of errors, both preserved and unpreserved, with a view of determining whether there was a reasonable justification or explanation for defense counsel's failure to object and whether any unpreserved error was prejudicial, i.e., whether the circumstances in totality are so persuasive that, minus the error, the appellant may have been found not guilty of a capital crime, or the death penalty may have not been imposed.

## I. VENUE

■ Appellant alleges he did not receive a fair trial because the trial court denied his request for a change of venue.

Prior to trial, the appellant filed a motion for a change of venue, which was legally insufficient because it was neither verified nor supported by affidavits. The Commonwealth provided twelve affidavits in support of the view that Laurel County could provide the appellant a fair trial. Further, the court conducted a hearing on the change of venue motion during which six witnesses testified that the appellant could receive a fair trial in Laurel County. Prior to trial, the court had found that publicity and other circumstances did not qualify for a change of venue. However, this matter was reserved for reconsideration during voir dire in the event that additional information developed that would warrant a change of venue.

■ Under either the due process clause or KRS 452.210, a change of venue should be granted if it appears that the defendant cannot have a fair trial in the county wherein the prosecution is pending. *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978). The moving party must demonstrate that: 1) There has been prejudicial news coverage, 2) It occurred prior to trial, and 3) The effect of such news coverage is reasonably likely to prevent a fair trial. *Brewster, supra*, citing *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The mere fact that jurors may have heard, talked or read about a case is not sufficient to sustain a motion for change of venue, absent a showing that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant. *Brewster* p. 235. The trial court has discretion in this determination and such will not lightly be disturbed. *Kordenbrock v. Commonwealth*, Ky., 700 S.W.2d 384 (1985).

The voir dire record reflects the correctness of the trial court's decisions on change of venue. The appellant asserts that 84.6 percent of jurors examined during individual voir dire admitted exposure to publicity and some knowledge about the case. However, an examination of the record indicates that, although almost every potential juror had heard or read something about the initial disappearance of the victims or arrest of the defendant, most did not remember details and had not prejudged the case.

Appellant also cites *Jacobs v. Commonwealth*, Ky., 870 S.W.2d 412 (1994), in support of his argument for a change of venue. In *Jacobs*, eighty five percent of the individuals responding to a pretrial survey revealed that they considered the defendant guilty. Here, only eight of the seventy four prospective jurors indicated that they had formed an opinion concerning the appellant's guilt. All but four jurors presumed appellant innocent. The seated jury was fair and impartial. No unqualified juror participated in the decision of the case.

■ This Court held in *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988), that a change of venue is not required despite the fact that 98 percent of prospective jurors knew about the case. That prospective jurors merely have heard about the case is not sufficient to sustain a motion for a change of venue. Rather, the test is whether the jurors have heard something that causes a preconception concerning the defendant. Even though a juror may have heard about the case in the past, he is still qualified if the court is assured and satisfied that he will put aside that prior knowledge and decide the

case in accordance with the testimony heard in the courtroom and on instructions given by the court.

■ Change of venue is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981) cert. denied 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982), *Grooms supra*. The trial court's decision must be given great weight due to the fact that it was present in the county and aware of the environment. We find no abuse of discretion by the trial court's denial of the motion for a change of venue.

## II. JURORS NOT STRICKEN FOR CAUSE

■ Appellant claims he was denied a fair trial on the ground that eighteen jurors should have been excused for cause, because their knowledge of the case from newspaper, television, personal and radio accounts was such that bias should be implied as a matter of law. There are no statutes defining relationships to which the courts will imply bias a matter of law. RCr 9.36 provides that "when there is reasonable grounds to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, he shall be excused as not qualified." This rule invests discretion in the trial court to detect and determine partiality and bias from particular circumstances or relationships between the juror and the accused or the case.

*Watson v. Commonwealth*, Ky., 433 S.W.2d 884 (1968) held that whether bias should be implied because of an acquaintance or relationship is within the sound discretion of the trial court. *Stone v. Commonwealth*, Ky. 418 S.W.2d 646 (1967), cert. denied, 390 U.S. 1010, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968) held the trial court's resolution should not be disturbed absent a demonstrated abuse of that discretion.

There is no requirement that prospective jurors be completely ignorant of the facts. The real test is whether, after having heard all the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict.

*Mabe v. Commonwealth*, Ky., 884 S.W.2d 668 (1994).

■ Being a law enforcement officer is insufficient to excuse for cause from jury service. Also, the mere fact that a person has been the victim of a similar crime is insufficient to mandate a prospective juror be excused for cause. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990). Further, having some acquaintance with or knowledge about the participants and their possible testimony does not automatically disqualify for cause. *Jones v. Commonwealth*, Ky.App., 737 S.W.2d 466 (1987). Even defense counsel's offending a juror during voir dire examination does not give rise to an automatic challenge. *Hicks v. Commonwealth*, Ky. App., 805 S.W.2d 144 (1990).

■ Bias is not automatically implied even where a juror has heard evidence at a previous trial of the same case. *Waggoner v. Commonwealth*, 255 Ky. 1, 72 S.W.2d 723 (1934). Nor is a juror subject to an implied bias challenge when he has heard a witness speak informally about a case prior to trial. *Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405 (1978), cert. denied 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978). In a murder case where both defendant and victim were employees of the same plant employing some 3000 workers, the fact that potential jurors from the plant were seated was not error. *Copley v. Commonwealth*, Ky., 854 S.W.2d 748 (1993).

In *Key v. Commonwealth*, Ky.App., 840 S.W.2d 827 (1992), the Court held that defendant had not shown juror bias by merely claiming the juror "knew" the defendant. The court reasoned that merely "knowing" the defendant does not disqualify the juror.

In a prosecution involving rape and sodomy, the court did not abuse its discretion in refusing to strike a juror who had been raped by her stepfather where she satisfied the court that she could objectively evaluate the evidence on all counts and render a fair verdict. *Whalen v. Commonwealth*, Ky. App., 891 S.W.2d 86 (1995). In *George v. Commonwealth*, Ky., 885 S.W.2d 938 (1994) this Court held that no error occurred when the trial court allowed a juror to remain on

the jury after she realized during testimony that she was the victim's third cousin. Neither counsel asked her any further questions, or objected to her serving, and the juror stated to the court that she could be fair and impartial. There was no evidence of a close family relationship.

■ Disqualification of a juror is merited only when the juror's knowledge precludes impartiality. Here, the trial court was diligent in excusing prospective jurors who had significant knowledge of the case and were subject to a reasonable inference that they may have formed an opinion. The trial court excluded those jurors who had such a close relationship with the parties, attorneys, witnesses, and victims as to create a presumption of partiality or bias. The record demonstrates that if the prospective jurors indicated any inability to adhere to the proper presumptions and burdens they were properly excused.

■ After carefully reviewing the transcripts of the voir dire of these eighteen jurors, we find no evidence of abuse of discretion of the trial judge in denying challenges for cause. From the record, we discern no close relationship, be it familial, financial, or situational with respect to any of the jurors with any of the parties, counsel, victims, or witnesses that would create a presumption of prejudice. On the contrary, the record here discloses a thorough voir dire examination and careful consideration of all challenges for cause. The trial court observed the demeanor of the prospective jurors and evaluated the substance of their answers. The court's careful and detailed inquiries along with the juror's definite responses served to eradicate any possible prejudice to the appellant. We find no reversible error on this issue.

### III. OTHER CRIMES—MT. VERNON SUNOCO SERVICE STATION

■ Rickey Smith, who owned and operated the Quality Sunoco Service Station in Mt. Vernon (Rockcastle County), Kentucky, testified as to events which occurred at his station soon after he opened around 6:00 a.m. on February 25, 1989, three days after the Hensley murder in Laurel County. After opening the station, but before putting out the equipment and displays, he saw a car pulling on to the lot. He waited at his desk and the driver came in and asked about getting a job. At trial, Smith identified the driver as the appellant. Smith testified that the appellant asked if the station ever had two employees on duty at the same time, to which Smith answered in the negative. The appellant kept looking out the window of the service station at the road and the driveway. As he started to leave the station, the appellant pulled out a revolver and began shooting at Smith until he ran out of bullets. Smith stated that he dove behind a metal desk and hit the floor face down. As soon as he heard the appellant stop shooting, he pulled out his own revolver and returned shots. Smith observed the appellant run to his car and drive off. This incident occurred only three days after the murder of Marvin Hensley.

■ Appellant raises the issue of insufficient notice pursuant to KRE 404(c). The KRE 404(c) requirement that the prosecutor give "reasonable pretrial notice" of intention to introduce other criminal evidence was satisfied. Appellant moved in limine to exclude from evidence the crimes in Rockcastle County and did not indicate that lack of pretrial notice was a basis for the motion to exclude such evidence.

At the pretrial hearing on the in limine motion to exclude the Rockcastle County crimes, the trial court's oral ruling was as follows:

"I think basically, is the Commonwealth and what it has furnished in discovery, putting the emphasis on the notice, I think you basically have supplied them with notice."

"The intent of [KRE 404(c)] is to provide the accused with an opportunity to challenge the admissibility of this evidence through a motion *in limine* and to deal with reliability and prejudice problems at trial." Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 2.25 (3rd Ed.1993). Obviously, no prejudice occurred, because Appellant had actual notice and did raise the 404(b) issue in his in limine motion.

Following Smith's testimony, the trial court admonished the jury that they should not consider any alleged acts of any criminal activity at the Sunoco station as evidence of guilt to the charges in Laurel County. Appellant argues that the testimony was improperly offered as evidence that he committed the crimes in question. We disagree.

The evidence pertaining to the appellant's attempted murder of Rickey Smith at the Mt. Vernon Sunoco Service Station was sufficiently probative under KRE 404(b). Forensic evidence linked the same handgun and bullets used at Rickey Smith's service station to the murder of Ronald Smith at the Jones' Chevron service station, to the murder of Marvin Hensley at the Hensley Spur Station, and to bullets found in possession of the appellant. The three incidents were sufficiently similar and interrelated for an inference that all three were committed by the same perpetrator. Moreover, there is a remarkable similarity between the respective crimes in Laurel and Rockcastle counties. In each, a lone service station operator was robbed during the early morning and shot with the same weapon.

Furthermore, one of the bullets that killed Smith and one of the bullets that killed Hensley had the same chemical composition. Three of the bullets that killed Hensley matched three of the bullets at the Sunoco station and matched sixteen of the twenty four bullets in an ammunition box found at appellant's home. Two of the bullets that killed Hensley matched one of the bullets at the Sunoco station and three of the bullets in the ammunition box. One of the bullets used at the Sunoco station matched five of the bullets in the ammunition box. We conclude that the jury must weigh such evidence in establishing an element of the offense.

 In *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), this Court approved admission of evidence that in each crime a victim alone in a rural shop or store was shot in the back of the head and robbed with the same weapon. In *Lear v. Commonwealth*, Ky., 884 S.W.2d 657 (1994), this Court explained the essential tasks for admissibility of the related crimes as follows:

Common facts rather than common criminality are the keystone of such an examination. The real question is whether the method of the commission of the other crime or crimes is so similar as to indicate a reasonable probability that the crimes were committed by the same person. If it does, evidence that the defendant committed the other crime is admissible to show intent, motive, or common plan.

 Here, the evidence of the shooting at the Sunoco station in Rockcastle County was highly probative. Identification of the accused as the perpetrator of the crime is essential in every criminal prosecution. Relevant evidence which is probative of an element of the crime is admissible even though it may tend to prove the commission of other crimes.

Moreover, because the appellant specifically denied he owned the handgun, and in particular a handgun of the type in issue, this evidence becomes admissible to rebut those claims by the defendant. This Court explained in *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 at 39 (1989) as follows:

In all instances, the question is whether the proposed evidence is primarily to prove the commission of another disconnected crime, or whether it is material to some issue in the case. If it is material and logically relevant to an issue in the case whether to prove an element of the crime, or to controvert a material contention of the defendant is not admissible because in making the proof the commission of an independent disconnected crime is an inseparable feature of it.

## IV. VICTIM HUMANIZATION

 The appellant alleges substantial prejudice, denying him due process of law, by the admission, without objection, of favorable evidence of the victims' character. Oda Proffitt, mother of the deceased Ronald L. Smith, identified a photograph. She testified that her son was 28 years old, divorced with one daughter that lived with her at the time of his death, a member of the Horse Creek Baptist Church in Clay County, and that his hobbies were watching and playing basketball. On appeal, there is a specific complaint

about her being questioned as to whether his refusal to alter his testimony in a civil case was courageous and honest behavior characteristic of his life. However, there was neither an objection nor motion to strike at the trial. The only objection made to any testimony regarding Ronald L. Smith's character was that he was a member of the Horse Creek Baptist Church. This was during the penalty phase, and while irrelevant, it was not unduly prejudicial.

Martha Hensley, widow of the deceased Marvin Hensley, testified that her husband was 48 years old and identified a photograph of him. She testified that his hobbies were fishing, golf, and watching sports. She and Hensley had moved back to London in 1971. He had leased property from her aunt and built a service station with proceeds from the sale of an auto parts store. He also built the service station where he was killed. In addition to operating a service station, Marvin Hensley pastored a church that he had helped to build in another county. He purchased the land for the church and then deeded it to the members. Marvin Hensley frequently gave gas, food, or shelter to people in need. Martha Hensley was not employed when Marvin Hensley was living, but obtained employment at Wal–Mart as a cashier after his death.

During the penalty phase, there was only one objection to the testimony of Martha Hensley. The objection was stated as follows:

> The basis for our objection is that this is getting beyond a certain background information that the law allows to be introduced, and getting into the thing with the family; I think the law is very clear, uh, that the impact on the family is not a proper object for the jury to deliberate on. Basically the basis of our objection is *irrelevance at this point.* [Emphasis added.]

It was irrelevant to go further in identifying the victims, and there was no further identification. There were no objections whatsoever to the Commonwealth's penalty phase closing argument about the murder of Marvin Hensley.

The appellant also argues the Commonwealth did not give notice that victim evidence would be introduced during the penalty phase. Aside from the voluminous discovery, the Commonwealth's response to the appellant's motion to exclude victims' evidence provides general notice that such evidence would be offered during the penalty phase. More importantly, there was not a single trial objection or post trial motion pertaining to inadequate notice. The appellant's motion for a new trial referred only to Martha Hensley's testimony that she needed to work after her husband's death. We conclude that the testimony, albeit irrelevant, was not unduly prejudicial. The record is clear there was no surprise by the introduction of victim related evidence.

The peaceful nature of both victims is subject to a logical inference that the murders were unnecessary and cold blooded. The Commonwealth may portray the reality of the violence by giving some background information regarding victims as such is relevant to a full understanding of the nature of the crime. The evidentiary value of details about the victims' personal life, while at times irrelevant, did not create undue prejudice.

The fact that Marvin Hensley was a preacher was relevant to explain his occupations. Tim Chappell, an informant and the appellant's cell mate, testified that the appellant specifically told him he was sorry about shooting a preacher as he did not realize the deceased was a preacher. Further, David Gross testified that Marvin Hensley's policy was not to resist a robbery. The only objection to Gross' testimony was the form of the question and answer in that it elicited a hearsay statement. There was no objection when the question and answer were rephrased.

A murder victim can be identified as more than a naked statistic, and statements identifying the victims as individual human beings with personalities and activities does not unduly prejudice the defendant or inflame the jury. *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984). Just as the jury visually observed the appellant in the courtroom, the jury may receive an adequate word

description of the victim as long as the victim is not glorified or enlarged.

■ In *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990), we allowed evidence that a homicide victim was a teacher, a sponsor of a club, worked a lot in extracurricular activities, lifted weights, and jogged six miles every morning. Information provided to the jury regarding the two deceased victims was not inappropriate nor excessive and did not operate to deprive the appellant of a fair guilt determination during the trial. *Bussell v. Commonwealth*, Ky., 882 S.W.2d 111 at 113 (1994). Further, the prosecutor's reference to the victims' families briefly during the guilt phase closing argument did not deprive the appellant of a fair trial. *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 at 448 (1987).

■ Allowing some victim impact evidence gives a measure of balance to the modern criminal sentencing process. The jury must consider any arguably relevant information offered by the convicted murderer, including all circumstances that can influence a rejection of the death penalty. *McCleskey v. Kemp*, 481 U.S. 279, 305–306, 107 S.Ct. 1756, 1774–1775, 95 L.Ed.2d 262 (1987). Also, the jury must consider the character of the criminal and the circumstances of the crime. *Zant v. Stephens*, 462 U.S. 862, 878–879, 103 S.Ct. 2733, 2743–2744, 77 L.Ed.2d 235 (1983); *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). Upon conviction, the murderer is permitted to parade relatives and friends before the jury while the victim remains little more than a statistic.

■ The United States Supreme Court in *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), held that the Eighth Amendment does not prohibit a capital sentencing jury from considering victim impact evidence. In determining whether execution is a deserved punishment for capital murder, the state can allow the jurors to consider "the full extent of harm caused by the crime, including its impact on the victim's family and community." The gravity of the consequences of a criminal's acts, stated the Court, is essential to the fact finder's meaningful assessment of "the defendant's moral culpability and blameworthiness." *Id.* at 825, 111 S.Ct. at 2608. The state can provide the fact finder "a quick glimpse of the life [the criminal] chose to extinguish to remind the jury that the person whose life was taken was a unique human being."

In *Payne* the United States Supreme Court overruled two of its recent cases, both of which declared the admission of victim impact evidence in a capital trial a per se violation of the Eighth Amendment. *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), held that the testimony and statements of the victims themselves were per se inadmissible on Eighth Amendment grounds. *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) extended the per se proscription to argument by the prosecutor. In overruling precedents aged only by a few years, the Court quoted Justice Cardozo, "Justice that is due to the accused is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." *Payne*, 501 U.S. at 827, 111 S.Ct. at 2609. The Court further stated that the harm inflicted upon the families, loved ones, and community of the slain victim is an integral element in the assessment of the criminal's blameworthiness.

As Chief Justice Rehnquist opined in *Payne*, "The victim is an individual whose death represents a loss to society." The singularity of each victim necessitates the conclusion that each victim has a distinct measure of societal worth. We conclude that the information provided to the jurors was not unduly prejudicial. The appellant received the death penalty because of the calculated, cold blooded murders, not the extraneous information admitted about the victims.

## V. COMPOSITION OF VENIRE

■ Appellant next claims error in the composition of the jury panel. He alleges the procedure employed in selecting the jury substantially deviated from the requirements of RCr 9.36 and KRS 29A.060, resulting in

the denial of due process of law and a fair trial. RCr 9.34 provides, "[a] motion raising an irregularity in the selection or summons of the jurors or formation of the jury must precede the examination of the jurors." Such did not occur and these claims were not preserved for appeal. Where claims of jury irregularity are raised for the first time on appeal, there must be a showing of actual prejudice. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990).

■ The appellant claims that jurors of the venire who had served on earlier panels were ineligible for further service because they had served more than thirty court days. KRS 29A.080 (2)(h) prevents a prospective juror from serving more than one term on a jury panel in a twelve month period. The record does not reflect any violation of this statute. The appellant cites KRS 29A.130, which states that a person "shall not be required to" serve more than thirty days in a twelve month period. However, KRS 29A.130 merely prevents a person from being forced to serve more than thirty days. KRS 29A.130 provides relief only for the prospective jurors and confers no standing to complain on the appellant.

*Stanford v. Commonwealth*, Ky., 734 S.W.2d 781 (1987) held there was no merit to the argument that commencement of jury selection on the last day of service for jury pool created a jury of volunteers. The record is devoid of any proof that any juror actually served more than thirty days. *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984) holds that a claim of irregularity must be demonstrated by actual prejudice. Further, *Brodgen v. Commonwealth*, Ky., 476 S.W.2d 192 (1972) requires a factual showing to demonstrate irregularity in the jury. *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 (1987) approved the practice of permitting jurors that appeared for service in one term to volunteer in a later term to serve out a trial. *Copley v. Commonwealth*, Ky., 854 S.W.2d 748 (1993) found no error in comprising a venire of three merged jury panels. There was no substantial deviation from the statutes and rules sufficient to require reversal in this case.

■ The appellant also complains that prospective jurors were excused for insufficient cause. One of seven jurors was excused, without objection during voir dire, because he was building a house. A substitute teacher was also excused due to financial hardship. Additionally, systematical exclusion of young people is claimed because five students were excused without objection. *Ford v. Commonwealth*, Ky., 665 S.W.2d 304 (1983) holds that young adults or college students are not a distinctive or cognizable as a class. Thus, the appellant's allegations of ineligible jurors and improper excusals are without merit.

## VI. INFORMANT/INFORMATION

■ Appellant claims an abuse of discretion in denying additional discovery regarding informant/witness Tim Chappell, appellant's cell mate. He contends his rights of confrontation and due process were violated by denial of requests for relevant impeachment information. We disagree. Tim Chappell was cross-examined extensively by defense counsel about his prior criminal records and dealings in the criminal justice system. Moreover, Chappell's attorney testified under waiver of attorney/client privilege and discussed Tim Chappell's dealings in the federal court system. The appellant has presented no evidence or allegation that this testimony was factually incomplete or false, or that the Commonwealth withheld any information pertaining to Tim Chappell.

*Bray v. Commonwealth*, Ky., 703 S.W.2d 478 (1985), held that a criminal defendant does not have a federal constitutional right to engage in a general exploration of other criminal activity on the part of the witness where there is no showing that the cross-examination would expose some motivation for the testimony being given. The appellant complains that he was not provided the psychiatric records of Tim Chappell, yet there is no showing that any such evidence existed.

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), held that under the *Brady* standard of disclosure, a prosecutor will not have violated the constitutional duty of disclosure unless his omission

is of such a significance to result in the denial of the defendant's right to a fair trial.

We have carefully examined the record in this case and find that the prosecutor disclosed all the relevant information as required by RCr 7.24. Moreover, the appellant fails to show how any of the requested information allegedly not disclosed could have possibly affected the outcome.

## VII. JUNK SCIENCE

■ Appellant alleges the court erred in allowing Trooper Johnnie Phelps to opine that the features of the handgun at issue were consistent with an impression made on the holster seized from the appellant's residence. Phelps testified that the handgun was identical to the impression on the holster and specifically indicated a wear mark that was consistent with a deformity on the trigger guard of the handgun. Defense counsel objected on the grounds that it was a matter the jury could observe from the exhibits and decide for themselves. The objection was not that there was no scientific validation for this theory, as the testimony did not involve a scientific theory. A jury could decide the correctness of Phelps' testimony by reviewing and examining the two exhibits.

KRE 702 has generally been interpreted liberally in admitting proffered evidence where there is reservation as to its helpfulness or the expert's qualifications. This testimony did not confuse, mislead, or prejudice the jury. Moreover, it aided the trier of fact because knowledge of unique characteristics of handguns and holsters is not wholly within the ordinary experience of jurors.

■ Appellant also complains that R.J. Elkins and David Gross were allowed to testify as to their impression about the appellant's demeanor or conduct. Elkins testified over objection that the appellant was looking at him and Hensley with "just kind of a strange look in his eyes", like he was trying to make a decision. Elkins was also allowed to testify that the appellant gave him and Hensley an "intense" look. KRE 701 permits the lay witness to testify in the form of an opinion or inference when that opinion or inference is rationally based on a perception of the witness and is helpful to a clear understanding of the witness' testimony or determination of a fact in issue. *Commonwealth v. Sego,* Ky., 872 S.W.2d 441 (1994), noted that the collective facts rule allows an individual to testify about a party's mental condition and emotion that is manifested to that witness. This testimony was comprehensible and the witnesses' credibility could be challenged through cross examination.

## VIII. PROPORTIONALITY OF SENTENCE

The Commonwealth, through its death penalty statutes, has established a proportionality review process. KRS 532.075(3)(c). Under KRS 532.075(1), "[w]henever the death penalty is imposed for a capital offense ... the sentence shall be reviewed on the record by the Supreme Court." Further, Subsection (3)(c) provides that "with regard to the sentence, the court shall determine ... [w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

Appellant complains that our review process denies him procedural due process because he does not have meaningful or appropriate notice of the procedure to be followed. Further, he alleges our analysis is superficial and incomplete, and that the sentence of death is excessive and disproportionate because he had just turned twenty when he committed the offenses, had no prior felony convictions, no juvenile dispositions, and no record of violent offenses.

■ The death sentence imposed on the appellant was not inappropriate, arbitrary, discriminatory, unusual or disproportionate. The sentence was imposed because he was found guilty of the intentional murders of two individuals at separate times and places, and of stealing money from the places where the victims were killed. The imposition of a death sentence for each murder committed under the intentional multiple death aggravating circumstances of KRS 532.025(2)(a)(6) is constitutional. *Smith v. Commonwealth,* Ky., 734 S.W.2d 437 (1987); *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1993).

Pursuant to KRS 532.075 we have made a careful review of the record and have determined that the death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Furthermore, the sentence is not disproportionate to the penalty imposed in similar sentences imposed since 1970, considering both the crime and the defendant. Those cases have been previously recited by this court most recently in *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988). That list is incorporated herein by reference and our review in this case is in accordance with KRS 532.075(5). In addition we have also considered the decisions in *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989); *Epperson and Hodge v. Commonwealth*, Ky., 809 S.W.2d 835 (1990); *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991) cert. denied 502 U.S. 1121, 112 S.Ct. 1243, 117 L.Ed.2d 475 (1992), and *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992). We have conducted an independent review of all the circumstances and conclude they justify the imposition of capital punishment.

■ Appellant advances several other arguments against the Kentucky death penalty, all of which are without merit. Its application cannot be considered arbitrary in view of the guidelines for its imposition as provided by KRS 532.035 and 532.075. As the United States Supreme Court has noted, juries consider individual defendants and individual cases when fixing a death sentence, and such statistical correlation of evidence is insufficient to invalidate a jury's specific finding. *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Furthermore, death by electrocution is not cruel and unusual punishment. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 683 (1990).

■ Appellant's argument that he was unfairly prohibited access to this Court's compilation of data with regard to a proportionality review, pursuant to KRS 532.075(6), is also without merit. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 683 (1990). The death penalty statute, as written in this Commonwealth, provides sufficient "standards to guide the jury in its inevitable exercise of the power to determine [who] shall die." *Wood-*

*son v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976). Its existence and imposition in this case does not violate the appellant's constitutional rights.

■ Appellant contends that the trial court erred in failing to instruct the jury that a sentence of death would result in his electrocution. Such an instruction is not required by law and its omission cannot be considered error. A jury selecting death as a sentence must be presumed to know that death will be the result of that sentence. A description of the intricate particulars of the workings of electrocution are not required, only that the jury weigh the importance of sending a criminal defendant to his death. There was no error regarding this issue, nor was there error in the jury's failure to make specific findings of mitigation. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 681 (1990). Moreover, there was no error in the instruction on the role of mitigating circumstances. Under KRS 532.025, a jury is not required to weigh mitigating factors against aggravating factors. *Id.* at 683.

■ Appellant further contends that the court refused to consider mitigating evidence when imposing the death sentence. The record indicates that the court followed its duties when considering mitigation, and that it considered all such mitigating evidence before imposing the death sentence. The trial court correctly considered the appellant's culpability. The trial court was not required to make specific findings of mitigating factors. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 681 (1990). Finally, the trial court was within its proper discretion in upholding the jury's sentence of death. The contention that there is no properly articulated standard of review for the trial court in such a circumstance is without merit.

Finally, the appellant argues that sufficient reasonable doubt in his case serves as a mitigating factor prohibiting the imposition of the death sentence. Citing *Stewart v. Illinois*, 469 U.S. 920, 921–922, 105 S.Ct. 303, 304–305, 83 L.Ed.2d 237 (1984) (Brennan & Marshall, JJ., dissenting from denial of cert.). Whatever the legal standard in the present case, both the trial court and the jury made

sufficient findings upon which a death sentence might rest. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There was no error.

## IX. OTHER ALLEGED ERRORS

In his brief the appellant presents the following additional allegations of error: (a) failure to direct a verdict of acquittal for burglary and robbery; (b) denial of confidential and independent expert; (c) incomplete and erroneous instructions; (d) failure to direct a verdict on aggravating circumstances; (e) improper penalty phase verdict form; (f) denial of speedy trial; (g) unconstitutionally limited voir dire; (h) failure to sequester the jury; (i) refusal to release psychological records; (j) improper rebuttal evidence; (k) criminal disposition evidence; (*l*) improper use of inadmissible evidence; (m) improper closing argument; (n) interference with right to investigate; (*o*) reciprocal use of mutually supporting aggravating factors; (p) denial of motions for continuance; (q) convictions for murder, robbery, and burglary violate prohibitions against multiple punishment; (r) denigration of mitigation; (s) reuse of robbery and burglary convictions to aggravate murder convictions violated double jeopardy protection; (t) failure to grant sufficient additional peremptories; (u) inaccess to data; (v) electrocution is cruel and unusual punishment (w) residual doubt; (x) cumulative error.

■ Many of the issues raised by the appellant are unpreserved. Because death penalty cases require greater scrutiny than other criminal cases, a different standard of review is applied in accordance with KRS 532.075(2) and our decision in *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984), cert. denied, 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984). Appellant's claim that the trial court erred in denying a directed verdict on the robbery and burglary charges is without merit. KRS 511.090(2) concerns privilege and license in the context of premises open to the public:

A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege unless he defies a lawful order not to enter or remain personally communicated to him by the owner of such premises or other authorized person.

Implicit in this statute is the concept that license or privilege expires once the person commits an act inconsistent with the purposes of the business. Bowling terminated his license to be on the premises when he committed the criminal acts. In *Tribbett v. Commonwealth,* Ky., 561 S.W.2d 662 (1978), this Court upheld a burglary charge even though Tribbett was given permission to enter the dwelling of the victim, because the permission had expired when he killed the victim. The offense of first degree robbery is committed even when the robber decides to steal the property after he kills the victim, so long as the theft and the murder are part of the same criminal episode. In *Williams v. Commonwealth,* Ky., 639 S.W.2d 786 (1982), the Court of Appeals quoted from the official commentary and held that a first degree robbery was committed even when physical force was used after the theft was completed.

■ Evidence in this case conclusively established that cash money was taken from the service stations and that Smith and Hensley were killed in conjunction with the taking of money. It is irrelevant whether the money is taken and the victim killed or the victim killed and then the money taken. KRS 515.020 does not require that the property be taken directly from the body of the person threatened or injured by the robber. When reviewing a defense claim of insufficiency of the evidence, we must determine "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983). Under our standard in *Sawhill,* the evidence was ample.

■ Appellant also claims error in the court's exclusion of jurors for cause who opposed the death penalty. There was no error in the removal of these jurors because they admitted they could not consider the full range of sentencing possibilities. *Stanford v. Commonwealth,* Ky., 734 S.W.2d 781 (1987),

*aff'd* 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).

Error is claimed in the refusal to grant additional peremptory challenges in excess of the ten awarded each side. Although we held in *Brewster v. Commonwealth,* Ky., 568 S.W.2d 232 (1978), that trial courts have the power to grant additional peremptory challenges, it is within the discretion of the trial court when considering the facts of a particular case. *Id.* at 236. RCr 9.40 does not require such determination and the number of peremptory challenges is best left to the sound discretion of the trial court. *Smith v. Commonwealth,* Ky., 734 S.W.2d 437, 445 (1987), cert. denied, 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 778 (1988).

In addition to the foregoing, the appellant asserts that cumulative errors mandate reversal of his conviction. Our review of the entire case reveals that the appellant received a fundamentally fair trial, and that there is no cumulative effect or error that would mandate reversal. *See Funk v. Commonwealth,* Ky., 842 S.W.2d 476 (1992).

Appellant also contends he was denied a fair trial because the trial court failed to sequester the jury prior to the submission of the case for determination of guilt, as well as between the guilt and sentencing stages of the trial. We do not agree. The decision to sequester the jury resides within the discretion of the trial court from the onset of the proceedings. The trial court undertook proper precautions to insure the jury was isolated from spectators, parties, and the press. Once selected, the jury was kept together as a group and properly admonished. Prior to resumption of the sentencing hearing, the trial court questioned the jurors about any possible media exposure. No juror responded affirmatively. Appellant has failed to demonstrate how he suffered any prejudice by the exercise of the trial court's discretion.

Appellant argues that the burglary and robbery convictions at the guilt phase cannot be used to prove aggravating circumstances for murder at the penalty phase. The rationale used in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) is applicable here. KRS 532.025 does not require that the defendant be punished for the same offense twice. The statute only requires that the aggravating circumstances be used to determine whether the crime of murder should receive the death penalty. If the aggravating circumstance cannot be proved, then the penalty of death cannot be imposed. KRS 532.030(2).

Simply because the aggravating circumstance duplicates one of the underlying offenses does not mean that the defendant is being punished twice for the same offense. The underlying offenses were only factors to be considered as to whether the punishment for murder should be death. Appellant was not subjected to double jeopardy or multiple punishment for the same offense.

In this opinion we have reviewed each of the issues presented by the appellant and conclude that there was no error of sufficient gravity to warrant reversal of his convictions. In other words, as to this conviction, there were no errors which we believe to be inconsistent with substantial justice or which affected the appellant's substantial rights. RCr 9.24. As such, we affirm the trial court's judgment upon a jury verdict whereby Appellant was found guilty of the crimes of murder, burglary, and robbery.

The judgments and death sentences are affirmed.

BAKER, GRAVES, KING, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents in a separate opinion in which STUMBO, J., joins.

STEPHENS, Chief Justice, dissenting.

Respectfully, I must dissent.

In all that appeal before this Court, but especially when the death penalty is imposed, it is incumbent upon this Court to insure that every aspect of the trial comports with the laws of the Commonwealth. In the case *sub judice,* appellant's conviction and sentence should be reversed due to errors which deprived him of a fundamentally fair trial. Specifically, I disagree with the majority on

the issues of jury selection and the admission of evidence to "humanize" the victims.

## JURY SELECTION

It is a fundamental concept that all defendants are guaranteed a trial by an "impartial jury." Ky. Const. § 11. There is no question

that a party charged with a criminal offense is entitled to be tried by a fair and impartial jury composed of members who are disinterested and free from bias and prejudice, actual or implied or reasonably inferred. This principle of justice is as old as the history of the jury system.

*Tayloe v. Commonwealth,* Ky., 335 S.W.2d 556, 558 (1960).

Moreover, it has been recognized by this Court that

A trial court's decision whether a juror possessed 'this mental attitude of appropriate indifference' must be reviewed in the totality of the circumstances. It is not limited to the juror's response to a 'magic question'. In this case the record is replete with circumstances establishing an inference of bias or prejudice on the part of jurors so pervasive that the jurors were beyond being rehabilitated as appropriate jurors by affirmative answer to such a question, however well intentioned.

*Montgomery v. Commonwealth,* Ky., 819 S.W.2d 713, 718 (1992).

Considering the totality of the circumstances in the instant case, the jury panel was clearly biased due to the publicity surrounding the trial, close relationships between prospective jurors and investigating police officers, as well as some expressions of preconceived notions of guilt before the trial began. Nellie Cole and Rebecca Jones were both struck by defense preemptory challenges while Cleda Creech served on the jury.

Cole testified that she had read newspaper accounts of the murders and believed that both a burglary and a robbery had been committed. Cole further stated that her religious beliefs included an understanding that the death penalty was "accepted by God" and that she was a Christian "first and foremost."

This Court has frowned upon the institution of the death penalty based upon religious beliefs. *See, Ice v. Commonwealth,* Ky., 667 S.W.2d 671, 676 (1984); *Morris v. Commonwealth,* Ky., 766 S.W.2d 58, 62 (1989) (Stephens, C.J., concurring).

Rebecca Jones testified that she had read accounts of the crimes and believed she would need to hear some evidence to convince her that no robbery or burglary took place. Moreover, Jones had grown up living next door to Detective Phelps and carpooled with Detective Lewis' daughter. In *Marsch v. Commonwealth,* Ky., 743 S.W.2d 830, 833 (1988), we concluded that

Irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.

It is clear that the trial court should have sustained appellant's challenge for cause and excused Jones based on her lifelong relationship with Detective Phelps.

Cleda Creech sat on the jury and participated in the sentencing of appellant. Creech testified that she could not consider a prison term of twenty years in a double murder case. Although Creech eventually stated that she would consider all the possible penalties, she only did so after repeated rehabilitation attempts by the trial court. This type of "rehabilitation" was condemned in *Montgomery, supra,* and does not cure the bias of the juror.

Contrary to the majority's assertion, the prospective jurors' responses during voir dire proved that they were not impartial and would thus be unable to render a decision based only upon the evidence presented at trial.

## VICTIM HUMANIZATION

In *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519, 523 (1984), this Court recognized the need to admit evidence to "humanize" a victim. Since that time, this Court has upheld the admission of "a certain amount of background evidence regarding the victim

[as] relevant to understanding the nature of the crime." *Bussell v. Commonwealth,* Ky., 882 S.W.2d 111, 113 (1994). However, the background evidence may not be admitted if it is presented in a manner that is "emotional, condemnatory, accusative or demanding vindication." *McQueen, supra* at 523.

The limitation on victim humanization evidence is based upon the principle that:

It is just as great a crime to kill the most hardened criminal as it is to kill the most upright and illustrious citizen in the land; hence evidence of the good or bad morals of the one slain has no proper place in a trial for murder.

*Benge v. Commonwealth,* Ky., 97 S.W.2d 54, 56 (1936). Further, the probative value of the evidence must be balanced with the danger of undue prejudice. When the balance tips in favor of undue prejudice, the trial court must "limit or exclude such evidence where the inflammatory effect clearly outweighs the probative value." *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534, 543 (1988).

In the instant case, the majority has upheld the admission of background evidence that was clearly admitted solely "to engender sympathy for the victim[s] and [their] famil[ies]." *Id.* There can be no other reason for admitting evidence that Marvin Hensley was a full time minister who bought the land on which he built a church which he later gave to that church. The Commonwealth also introduced evidence that Hensley "read the word" every morning, that he always helped out those in need, that his policy was not to resist a robbery attempt, and that his wife did not work before his death, but now had a part-time job at Wal–Mart. Contrary to the majority's assertion that this evidence was merely "irrelevant", this evidence is exactly the type this Court has condemned in *Morris v. Commonwealth,* Ky., 766 S.W.2d 58 (1989); *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988); and *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984); *Nickell v. Commonwealth,* Ky., 565 S.W.2d 145 (1978). The admission of this evidence denied appellant a fair trial.

Due to the tainted jury selection and the admission of the humanizing evidence, I would reverse appellant's conviction and sentence.

STUMBO, J., joins in this dissenting opinion.