Harlie LEWIS, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000395–DG.

Supreme Court of Kentucky.

March 21, 2013.

Daniel T. Goyette, Bruce P. Hackett, Office of the Louisville Metro Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General, Jeffrey Allan Cross, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, for appellee.

Opinion of the Court by Justice CUNNINGHAM.

In the morning hours of January 3, 2006, Appellant, Harlie Lewis, entered a Walgreens Pharmacy located in Jefferson County, Kentucky. Appellant's behavior caused some of the employees at the pharmacy to become suspicious. The manager immediately called the police., Once at the pharmacy counter, Appellant requested the narcotic Oxycontin, along with another drug which the pharmacist did not recognize. The pharmacist asked Appellant if he had a prescription for the medications. According to the pharmacist, Appellant responded, "No, I have a gun." Without delay, the pharmacist went to the dispensing area to obtain the requested medications.

Meanwhile, the police, who had been alerted, arrived and apprehended Appellant. The police found a knife in Appellant's pocket, but no gun was found. After his arrest, it came to light that Appellant was highly impaired and believed that he was at another pharmacy trying to fill a valid prescription for anti-depressants. Appellant also denied making the statement that he possessed a gun.

A Jefferson Circuit Court jury acquitted Appellant of robbery, but found him guilty of burglary in the first degree. The trial court sentenced Appellant to a thirteen-year term of imprisonment. Appellant appealed his conviction to the Court of Appeals raising three issues, only one of which we need address: whether Appellant was entitled to a directed verdict of acquittal as to the first-degree burglary charge.

The Court of Appeals affirmed Appellant's conviction. This Court granted discretionary review, vacated the Court of Appeals' opinion, and remanded the case back to the Court of Appeals for further consideration in light of *Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010). On remand, the Court of Appeals once again affirmed Appellant's conviction and we granted discretionary review.

Appellant argues that he was entitled to a directed verdict of acquittal on the first-degree burglary charge. Particularly, Appellant maintains that the Commonwealth failed to prove that he remained unlawfully in the Walgreens Pharmacy.

■ "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

■ Burglary is a common law crime that was created for the purpose of protecting individuals in the sanctity of their homes. *Funk v. Commonwealth*, 842 S.W.2d 476, 483 (Ky.1992) (Leibson, J., dissenting in part, concurring in part). The Commonwealth's modern burglary statute, like many other states' burglary statutes, scarcely resembles its common law ancestor. *See Hayes v. Commonwealth*, 171 Ky. 291, 188 S.W. 415, 417 (1916) (burglary is a breaking and entering in the nighttime of the house of another with the intent to commit a felony). In 1974, the General Assembly codified the crime of burglary, exchanging its unique identifiers for a broad expansion outlined in KRS 511.020 *et seq.* Burglary in the first degree is defined in KRS. 511.020(1), which currently provides as follows:

A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

■ The language "knowingly enters or remains unlawfully" expanded common law burglary to situations where the burglar is actually under privilege or license to be present in the building. The statute's official commentary explains that the requirement "knowingly enters or remains unlawfully" was intended to "preclude[ ] the possibility of a conviction for burglary in the absence of proof that an intruder had knowledge that his intrusion was without privilege or license." *Id.*

KRS 511.090 defines "enters or remains unlawfully" as follows:

(1) A person "enters or remains unlawfully" in or upon premises when he is not privileged or licensed to do so.

(2) A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license or privilege *unless he defies a lawful order not to enter or remain personally communicated to him by the owner of such premises or other authorized person.* (Emphasis added.)

■ What we garner from these two statutes is that there is a presumption that one who enters and remains in a building that is open to the public has a license or privilege to be there. Indeed, if the building is open to the public, one does not unlawfully remain in the building absent revocation of his or her license or privilege. Thusly, the statutory elements of burglary are not met unless the assailant knowingly defies a lawful order, i.e., an expressed revocation of the license to be on the property. The plain language of the statute makes clear that in order for the licensee to "know" his license has been revoked, the owner of the building or one

with authority must "personally communicate[ ]" the revocation to the licensee.

In addition to verbal revocations, this Court has found non-verbal actions to suffice. In *Wilburn*, we found that the owner of a liquor store firing a gun at two assailants attempting to rob the store was the "functional equivalent" of the store owner "personally communicating" his revocation of the assailants' licenses to remain on the property. 312 S.W.3d at 324.

■■■■ Our predecessor Court also expanded the statute to encompass implicit revocations—revocations that are not communicated in any fashion. In *Tribbett v. Commonwealth*, the defendant and his accomplices murdered and robbed the victim after being invited into the victim's residence. 561 S.W.2d 662, 664 (Ky.1978). The Court utilized deep-rooted property law to uphold the defendant's burglary conviction. That legal principle, which we hereby reaffirm today, was that the defendant's license was implicitly revoked once he and his accomplices murdered the licensor.[1] "Upon the death of the licensor, the license ceased and the privilege to be upon the premises lapsed." *Id.*

In *Bowling v. Commonwealth*, we extended *Tribbett* to places of business. 942 S.W.2d 293, 307 (Ky.1997), *overruled on other grounds by McQueen v. Commonwealth*, 339 S.W.3d 441 (Ky.2011). However, the jurisprudential water was muddied from one key sentence found in *Bowling* that a person's license is implicitly revoked "once the person commits an act inconsistent with the purposes of the business." 942 S.W.2d at 307. This proposition was

cited in *Fugate v. Commonwealth*, 993 S.W.2d 931, 940 (Ky.1999) and later referred to as a "sound" principle in *Wilburn*, 312 S.W.3d at 325. Unsurprisingly, the Court of Appeals relied on this proposition in affirming Appellant's burglary conviction in the case *sub judice*.

The Court of Appeals' reliance on *Bowling*, however, was improper. We find that the proposition stated in *Bowling*—that a license can be implicitly revoked from acts inconsistent with the purpose of the business—was obiter dictum, a mere surplus of opinion. We do not believe that the faulty proposition was the basis for upholding Bowling's burglary conviction; nor do we consider the proposition to be a controlling principle. Indeed, the Court upheld the burglary convictions in both *Bowling* and later *Fugate* on the same grounds as were espoused in *Tribbett*—that because defendants in both cases murdered the licensor or one with like authority, their licenses to remain on the premises ended by implication. In practical effect, if we were to hold the *Bowling* language as controlling law, the Commonwealth would be permitted to tack on a burglary charge to any criminal act committed within a building. Such a principle is absurd and in direct contravention of the plain language of the statute.

■■■ Turning back to the case *sub judice*, we hold that Appellant's license was not explicitly or implicitly revoked. The employees of Walgreens did not verbally revoke the Appellant's license. Nor did the employees of Walgreens engage in an overt act which was the functional equivalent of an explicit revocation. On the con-

---

1. "Generally, a license in respect of real property, since it is a mere personal privilege, cannot be assigned or transferred by the licensee. A license does not pass with the title to the property, but is only binding between the parties, *expiring upon the death of either party*." 25 Am.Jur.2d *Easements and Licenses* § 117 (2004) (emphasis added); "Since a license is a personal privilege, ordinarily it is terminated by the death of either the licensor or the licensee, unless, in case of the death of the licensor, the heirs elect to continue it in force. 53 C.J.S. *Licenses* § 142 (2006).

trary, the employees of Walgreens actually took steps to engage the assailant in business with the intention of keeping him there until police arrived. Despite their elevated suspicion, the employees of Walgreens asked to help the Appellant and continued to obtain the requested narcotics.

Furthermore, Appellant's license was not revoked by implication. While Appellant's attempt to obtain narcotics without a prescription was certainly an act inconsistent with the purpose of the business, that alone, absent the death of the licensor or one with like authority, did not implicitly end Appellant's license to remain in the pharmacy. We acknowledge that it may seem illogical to conclude that a shop owner continues to consent to a patron's remaining on the premises, even after that person is in the act of committing a crime. But, absent the death of the licensor, we must follow the plain language of the statute.

In light of the evidence provided at trial, we find that the Commonwealth failed to prove the necessary elements of burglary as delineated in KRS 511.020. Consequently, it was unreasonable for the jury to have found Appellant guilty of burglary in the first degree. A directed verdict of acquittal was warranted. For the aforementioned reasons, we reverse the opinion of the Court of Appeals and remand to the Jefferson Circuit Court for a judgment of not guilty to be entered.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.