James **BUMPHIS**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2006–CA–000693–MR.

Court of Appeals of Kentucky.

May 11, 2007.

Discretionary Review Denied by Supreme Court Oct. 24, 2007.

---

Euva D. May, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, for appellee.

Before ABRAMSON and STUMBO, Judges; KNOPF,[1] Senior Judge.

## OPINION

ABRAMSON, Judge.

James Bumphis appeals from his conviction for second-degree robbery and first-degree persistent felony offender (PFO). He contends that the trial court erred by failing to grant a directed verdict on the robbery charge because the victim initiated the use of physical force. Bumphis also argues that the trial court erred both in allowing the Commonwealth to strike an African–American juror and in overruling his motion to suppress evidence of his prior convictions. We affirm.

On July 12, 2005, Steve Miljan was eating lunch in the phone room located in the back of the Honey Baked Ham store that he owned. Returning to his lunch after visiting the rest room, Miljan noticed that the back door of the store was open and saw a stranger, Bumphis, standing in the store's spare cooler. Thinking Bumphis was a delivery driver, Miljan looked outside for a delivery van. When he didn't see one, however, Miljan closed the door and turned back toward the cooler. Miljan immediately saw his wife's and another employee's purses on the floor near Bumphis. At this same moment, he also saw Bumphis in the process of stuffing a wallet down the front of his pants. Seeing Miljan looking at him, Bumphis took the wallet out of his pants and threw it down. Miljan then locked the back door and stood in front of it.

Bumphis approached Miljan stating that he wanted to buy a soft drink crate. When Miljan accused him of stealing, Bumphis denied that he took anything. Miljan responded by telling him not to leave and called out to his employees to call the police. Bumphis then told Miljan that he was going to leave and started for the door. At that point a scuffle ensued. After a few moments, Miljan managed to restrain Bumphis in a bear hug and pin him against a wall while Bumphis repeatedly struck Miljan across the back

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5) of the Kentucky Constitution and KRS 21.580.

with his hands. The scuffle did not end until Miljan received assistance from his wife and another employee who were able to restrain Bumphis's arms until the police arrived.

Following their arrival, the police questioned Bumphis about the wallets and purses in the cooler. Bumphis eventually admitted that he intended to steal the wallets, but contended that the physical altercation was solely the result of Miljan's use of force to prevent him from leaving the store. The police arrested Bumphis, who was ultimately convicted of one count of second-degree robbery and one count of first-degree persistent felony offender. This appeal followed.

██ Bumphis argues that the trial court erred by not granting his directed verdict motion at trial because the physical confrontation was instigated by Miljan. Conversely, Bumphis contends that he did not use or threaten to use any physical force, a necessary prerequisite to a conviction for robbery. In fact, Kentucky Revised Statute (KRS) 515.030(1) provides that "[a] person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft." It is not clear from the record exactly who "struck the first blow" in the scuffle between Miljan and Bumphis. While it appears that the confrontation originated from simultaneous attempts by Bumphis to leave the store and Miljan to prevent him from doing so, our decision herein is not affected by who made first contact.

In *Mack v. Commonwealth*, 136 S.W.3d 434 (Ky.2004), our Supreme Court held that a defendant's use of physical force while attempting to escape following a theft was sufficient to sustain a conviction for first-degree robbery. In so holding, the Supreme Court noted with approval the decision in *Williams v. Commonwealth*, 639 S.W.2d 786 (Ky.App.1982), wherein this Court affirmed a defendant's conviction for first-degree robbery after he used physical force while attempting to escape following a theft. In so holding, we stated that

> the fair import of the term "in the course of committing theft" ... include[s] the time, place and circumstances surrounding a theft or attempted theft. This encompasses the escape stage. We believe the fair import of the meaning of "escape stage" "to be all steps or events in the process of escape which would fall within the active or continuous pursuit of the criminal actor."

*Id.* at 788. Thus, it is clear that the exercise of force by someone attempting to escape after the commission (or attempted commission) of a theft is sufficient to justify a robbery charge. However, these decisions do not specifically address the question as to whether a robbery charge is appropriate when the exercise of force is in response to resistance initiated by the victim to prevent the suspect's escape. Though we find no Kentucky decisions squarely addressing this issue, we believe that it is.

As discussed above, Kentucky law provides that the use (or threat of use) of force by a suspect while attempting to escape following the commission of a theft is sufficient to support elevation of the charge to robbery. In *Mack, supra*, the victim was injured by the man who had stolen her purse after she chased the defendant to his car in an attempt to retrieve the purse. In *Williams, supra*, the defendant, upon being discovered in a laundry by an employee, grabbed a handful of clothes and ran. The laundry employee gave chase in an attempt to capture the

defendant,[2] but retreated when the defendant drew a knife. In each case, because the defendant used or threatened force when his escape was impeded, the robbery charge was upheld. In neither case did the victim exert physical force against the defendant. However, had the circumstances been slightly different in *Williams* (e.g., suspect from laundry theft had no knife) it is certainly foreseeable that the victim might have attempted to physically subdue the thief.

■ In the present matter, Miljan, like the victims in *Mack* and *Williams,* attempted to prevent Bumphis's escape. Rather than choosing to accept his fate after being discovered, Bumphis instead opted to force his way through the door blocked by Miljan. However, because Bumphis lacked the means to prevent him from doing otherwise, Miljan physically stopped Bumphis from fleeing. Under these circumstances, it would be unjust to reverse Bumphis's conviction for robbery while sustaining a conviction in a case where the defendant successfully prevented resistance through striking first or drawing a weapon. Thus, while no Kentucky decision has directly addressed this question, we hold that a charge of robbery is established when a defendant, in the course of committing a theft, exercises or threatens physical force during an attempted escape in an effort to prevent or otherwise overcome resistance exerted by the victim.

■ Bumphis also claims that the Commonwealth purposefully excluded an African–American juror from the panel of potential jurors on the basis of race in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In *Batson,* the United States Supreme Court held that peremptory challenges could not be used to purposefully exclude a potential juror on the basis of race. Upon raising an objection that a juror has been unlawfully excluded, a defendant must make a prima facie showing of purposeful discrimination by showing facts and other circumstances that raise an inference that the prosecution unlawfully struck the potential juror because of that person's race. *Batson, supra* at 96, 106 S.Ct. 1712. Once the defendant successfully makes the prima facie showing, the burden is then on the prosecution to demonstrate a race-neutral reason for exercising its peremptory challenge. *Id.* at 97, 106 S.Ct. 1712. When reviewing a ruling on a *Batson* challenge, the appellate court will not disturb the trial court's decision unless it is found to be clearly erroneous. *Washington v. Commonwealth,* 34 S.W.3d 376 (Ky.2000).

After reviewing all of the circumstances surrounding Bumphis's challenge of the Commonwealth's peremptory strike of the juror in question, the trial court found that no *Batson* violation occurred. We agree. Unlike the circumstances in *Batson* and *Washington,* in this matter not all of the African–American jurors were stricken from the panel of prospective jurors. After the juror in question was stricken, three African–Americans remained in the pool that initially contained thirty-two members, and one was ultimately selected for service on the jury. Moreover, the Commonwealth explained that it struck the juror not because of his race, but rather because he was on probation for a theft-related offense and the potential for bias warranted the exercise of the peremptory challenge.

---

2. It seems apparent that the employee was not merely attempting to recover the stolen clothing because the defendant had already dropped the clothing in a dumpster when the employee caught up to him. Only after retreating upon seeing the defendant's knife did the employee retrieve the clothing.

Bumphis argues that because the Commonwealth did not question the juror about his potential bias, the trial court should have conducted a further inquiry to determine whether discriminatory intent prompted the Commonwealth's decision to strike him. It is true that the the United States Supreme Court has recently held that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination...." *Miller–El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). However, in defense of its action before the trial court, the Commonwealth demonstrated that in addition to the juror in question, it also struck two *non*-African-American jurors for the same reason. Conversely, Bumphis has failed to offer any evidence that any non-African-American jurors who were similarly situated to the juror at issue were allowed to serve. Given these circumstances, we find nothing to support Bumphis's allegation that the trial court's actions were clearly erroneous. Thus, the trial court did not err when it declined to engage in further voir dire.

Finally, Bumphis contends that the trial court erred by failing to exclude evidence of his prior convictions. He argues that his prior guilty pleas were not knowingly and voluntarily offered because he was unaware on the occasions he made them that they could be used against him in the future to enhance any sentences he may receive. The trial court overruled Bumphis's motion on the ground that it was not the proper forum to entertain collateral attacks against prior judgments or ineffective assistance of counsel claims arising from them. Moreover, the trial court found especially troubling the fact that Bumphis had previously pled guilty to PFO charges on two separate occasions.

█ The trial court was correct that "[a] motion to suppress evidence of prior convictions does not furnish a forum to litigate the issue of ineffective assistance of counsel." *Corbett v. Commonwealth*, 717 S.W.2d 831, 835 (Ky.1986). Further, though Bumphis argues that the trial courts in which he entered his prior guilty pleas failed to advise him of his constitutional rights pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the trial court in this matter was not the correct forum to address his claims. In *McGuire v. Commonwealth*, 885 S.W.2d 931 (Ky.1994), the Kentucky Supreme Court, after reviewing federal decisions pertaining to the viability of collateral attacks on judgments used to prove prior felony offender status, noted that KRS 532.080, the persistent felony offender statute, relies only on the fact of prior convictions and does not address itself to the underlying validity of those convictions. Because of this, "[t]he PFO enhancement statute is ... lacking in any indication the General Assembly intended to permit collateral attacks on prior convictions used for sentence enhancement purposes." *McGuire, supra* at 937 (internal quotation marks deleted). The Supreme Court has instructed that:

A duly authenticated record of a judgment and conviction which is silent on the exercise of constitutional rights is prima facie evidence to establish the fact of conviction. It is the fact of conviction which the Commonwealth seeks to prove in introducing the judgment against a defendant charged as a persistent felon. KRS 532.080 does not specify that the Commonwealth must affirmatively prove both the fact of conviction and that the previous conviction was not obtained by constitutionally impermissible means.

*Commonwealth v. Gadd*, 665 S.W.2d 915, 917 (Ky.1984).

The practical effect of this is that "Kentucky trial courts are no longer required to

conduct a preliminary hearing into the constitutional underpinnings of a judgment of conviction offered to prove PFO status unless the defendant claims a complete denial of counsel in the prior proceeding." *McGuire, supra* at 937 (quotation deleted). Applying this principle to the present matter, we find no evidence in the record that Bumphis has alleged that he was completely denied the assistance of counsel in any of the prior convictions used by the Commonwealth to establish PFO status. Because of this, and further because the trial court was not the proper forum for Bumphis's collateral attack on those convictions, the trial court's decision to overrule Bumphis's motion to suppress is affirmed.

In sum, we find no error in the trial court's decision to overrule Bumphis's objection to the Commonwealth's use of a peremptory challenge to strike an African–American juror, as well as Bumphis's motion to suppress evidence of his prior convictions. Therefore, finding that Bumphis's conviction for second-degree robbery and first-degree PFO was sufficiently supported by the evidence adduced at trial, we affirm the March 28, 2006 judgment of the Warren Circuit Court.

ALL CONCUR.