**Terry Glenn HOBSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000645–DG.

Supreme Court of Kentucky.

March 18, 2010.

As Corrected April 15, 2010.

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Robert Long, Jr., Assistant Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Following a jury trial, Appellant Terry Glenn Hobson was convicted in Boyd Circuit Court of first-degree robbery, receiving stolen property, and giving a peace officer a false name. For these crimes Appellant was sentenced to a total of ten years.[1] The Court of Appeals affirmed Appellant's conviction and sentence. We granted discretionary review and now reverse the first-degree robbery conviction and sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict, the facts are as follows. On July 11, 2005, Appellant broke into Rod Stamper's pick-up truck and took, among other items, his driver's license and several credit cards. After Appellant used one of the stolen credit cards at an Ohio Wal–Mart, other area Wal–Mart stores, including the one located at Town Center Mall in Ashland, Kentucky, were notified to be alert for repeat attempts.

On the evening of July 11, 2005, Appellant entered the Town Center Wal–Mart, placed various items in a cart, went to a check-out register, and presented one of the stolen cards to pay for the merchandise. The cashier, recognizing the card as stolen, employed the ruse of acting as if her register was malfunctioning so that

---

1. The individual sentences are as follows: for robbery, ten years; for receiving stolen property, six months; and for giving a false name to a peace officer, 45 days, all to be served concurrently.

she could report the situation to her manager.

As it so happened, Ashland Police Officer J.R. Schoch was at the store on an unrelated police matter. The officer and the manager went to the register, and Schoch asked Appellant his name. Appellant identified himself as Rod Stamper and produced the stolen driver's license as verification. When challenged that he looked nothing like the person pictured on the license, Appellant changed his story to claim that he was Stamper's cousin and that Stamper had given him permission to use the card.

Schoch asked Appellant if they were to call Stamper would he confirm this. Appellant responded affirmatively and agreed to accompany the officer and the manager to the loss prevention office to make the call. The office was occupied so Schoch and Appellant waited outside while the manager went into the office to see about using it. The office was located near a door used to bring shopping carts from the parking lot into the store. Meanwhile, all of the merchandise Appellant had planned to steal by the fraudulent use of the stolen credit card remained back at the checkout counter.

After a brief wait, Appellant suddenly bolted through the shopping cart door into the parking lot, and Schoch gave chase. When the officer caught Appellant, a scuffle ensued. Appellant concedes that he used force against Schoch to avoid capture. In the course of the scuffle, Schoch's ankle was broken in three places. With the help of others, Appellant was ultimately restrained and arrested.

Appellant was indicted for first-degree robbery, receiving stolen property, giving a peace officer a false name or address, and being a first-degree persistent felony offender. Following a jury trial, he was convicted of all charges except the persistent felony offender charge. He was sentenced to a total of ten years imprisonment.

First-degree robbery requires that one use, or threatens to use, force upon another person with intent to accomplish a theft. Because the evidence established that Appellant had abandoned the theft before he used force against the police officer attempting to prevent his escape, the Commonwealth failed to prove an essential element of first-degree robbery. Accordingly, we reverse the first-degree robbery conviction.

## DISCUSSION

Appellant contends that he was entitled to a directed verdict on the first-degree robbery charge because the proof failed to establish the elements of first-degree robbery as defined in KRS 515.020. He argues that at the time he used force against Schoch there had been an interruption of the theft, he had abandoned the theft, and thus the use of force did not occur during "the course of committing a theft." We agree with Hobson that all elements necessary to sustain a first-degree robbery conviction were not proven; however, as explained below, our reasoning is slightly different from his.

The first-degree robbery statute, KRS 515.020 provides as follows:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime;

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

Because there was no evidence that Appellant was armed with a deadly weapon, or that he used or threatened to use a dangerous instrument, subsections (1)(b) and (1)(c) are not implicated. Appellant was charged under KRS 515.020(1)(a), with Schoch being the non-participant to whom Appellant caused physical injury.[2] The force he allegedly used to accomplish the theft was the force used against Schoch.

Since the adoption of KRS 515.020, three published cases have considered situations in which the use of force by the defendant did not occur prior to or contemporaneous with the attempted theft, but, as here, occurred during an attempt to escape from the scene: *Williams v. Commonwealth*, 639 S.W.2d 786 (Ky.App. 1982); *Mack v. Commonwealth*, 136 S.W.3d 434 (Ky.2004); and *Bumphis v. Commonwealth*, 235 S.W.3d 562 (Ky.App. 2007). To lay the groundwork for our discussion, we begin with a review of these cases.

In *Williams*, the defendant broke into a dry cleaning business and was in the process of stealing items when he was interrupted by a store employee. The defendant fled out the back door and discarded the stolen items in a dumpster. When the pursuing employee caught up to him, the defendant brandished a knife, and the employee retreated to the store, retrieving the stolen items along the way. *Williams*, 639 S.W.2d at 787. Thus, *Williams* is squarely on point with the present case—the theft was unsuccessful, the use of force occurred during the escape phase after the stolen items had been abandoned, and after any expectation of accomplishing the contemplated theft had been given up. *Williams* concluded that conviction was

proper under KRS 515.020, stating as follows:

In 1975, K.R.S. 515.020 became effective; and in essence the statute says that if force or the threat of force is used, then a robbery has been committed. It is the Commonwealth's argument that the statutory clause, "in the course of committing theft," encompassed Williams' flight from the scene, and that the theft was not complete because Williams was still in the escape stage. The Commonwealth cites the Kentucky Penal Code, Final Draft (L.R.C.1971), Commentary to Section 1600(iii) at 180:

Sections 1605 and 1606 (K.R.S. 515.020 and K.R.S. 515.030) change this law by expanding robbery to include all situations involving the use of force "in the course of committing theft." As indicated above, this is intended to extend all the way from the attempt stage of theft through the escape stage.

While the commentary to the Code is not binding upon us under the authority of *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977), we are entitled to use the commentary as an aid in construing the provisions of the statute pursuant to K.R.S. 500.100. Further, K.R.S. 500.030 mandates that "All provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law."

Therefore, we conclude that robbery in the first degree was committed. The fact that force was used sometime after and some distance from the taking is only incidental. The force used was in

---

**2.** We note that the elements of second-degree robbery as defined in KRS 515.030 mirror the language contained in KRS 515.020(1), without the aggravators contained in KRS 515.020(1)(a)–(c). Thus our discussion of the relevant issues will also be applicable to second-degree robbery.

the course of committing the theft because it happened during the escape stage. We construe the fair import of the term "in the course of committing theft" to include the time, place and circumstances surrounding a theft or attempted theft. This encompasses the escape stage. We believe the fair import of the meaning of "escape stage" to be all steps or events in the process of escape which would fall within the active or continuous pursuit of the criminal actor. *See K. Brickey, Kentucky Criminal Law,* § 15.02 (1974). We find no error of the trial court in overruling the motions for directed verdict of acquittal. *Id.* at 787–788.

Thus, under *Williams,* though force was not used until after the theft had been abandoned (the defendant had thrown the items into a dumpster before pulling the knife), a robbery conviction was sustained. It follows that application of *Williams* would require us to sustain Appellant's conviction.

The next case addressing the use of force in the escape phase, *Mack v. Commonwealth,* 136 S.W.3d 434, followed the reasoning expressed in *Williams* (the escape being "in the course of committing theft"), but under a factual scenario with a distinguishing difference. In *Mack,* the 71 year-old victim was returning to her car from shopping. She opened the door, climbed into the vehicle, and placed her purse on the passenger seat. Before she was able to close the car door, the defendant appeared and reached across the victim, grabbed her purse from the passenger seat, and ran to his own car. The victim pursued the defendant and reached for her purse as he jumped in his car. The defendant slammed the door on her hand. The defendant then opened the door and shoved the victim away from the vehicle, knocking her to the ground, before driving

away. As a result of the force used on her, the victim suffered lacerations and bruising on her hands, as well as a broken finger. *Id.* at 435–436. On appeal, the defendant contended that his use of force against the victim was not in the course of committing the theft of her purse and with the intent to accomplish the theft because it was not until after he had gained control over the purse that she was injured. *Id.* at 437.

We disagreed, stating "a use or threat of force during escape from a completed or attempted theft will ... satisfy the requirement [of "in the course of committing theft"] and support a conviction." *Id.* at 438 (quoting Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 13–7(b)(2) (LEXIS, 1998)). The decision cited with approval the holding from *Williams* that "the fair import of the term 'in the course of committing theft' ... include[s] the time, place and circumstances surrounding a theft or attempted theft. This encompasses the escape stage. We believe the fair import of the meaning of 'escape stage' to be all steps or events in the process of escape which would fall within the active or continuous pursuit of the criminal actor." *Id.* at 437 n. 10. Similarly, the opinion approved of the Official Commentary to KRS 515.020 as set forth in the excerpt from *Williams* quoted above. *Id.*

In *Mack,* defendant's use of force during the escape phase was clearly for the purpose of accomplishing the theft, i.e., he had possession of the purse and injured the victim as she attempted to reclaim it. Mack had in no way abandoned his intent to commit a theft. His effort to escape was "in the course of committing theft" and he used force "with the intent to accomplish the theft", satisfying the essential elements of robbery first degree. As fur-

ther explained below, this was a proper application of the law.

Finally, in *Bumphis*, 235 S.W.3d 562, the victim was eating lunch in his store when he noticed the defendant standing beside two purses, stuffing a wallet down the front of his pants. The defendant, realizing that he was caught, took the wallet out of his pants and threw it down. The victim blocked the defendant's escape route and accused him of stealing. The defendant denied taking anything. The victim called out to his employees to call the police. When the defendant attempted to flee, a scuffle ensued during which the defendant repeatedly struck the victim across the back with his hands. As a result of that conduct, the defendant was convicted of second degree robbery.

Applying *Williams* and *Mack*, the Court of Appeals upheld the conviction, stating, "we hold that a charge of robbery is established when a defendant, in the course of committing a theft, exercises or threatens physical force during an attempted escape in an effort to prevent or otherwise overcome resistance exerted by the victim." *Id.* at 565. Thus, like *Williams*, *Bumphis* holds that the "force with intent to accomplish a theft" element may be satisfied even if the force is used after the defendant has abandoned his plans to commit a theft. Unlike *Mack*, but similar to *Williams*, Bumphis's only use of force occurred *after* he had abandoned his attempt to steal property, and his only apparent objective was escape.

We agree with *Williams*, *Mack*, and *Bumphis* to the extent they recognize that an act of theft extends through the thief's getaway attempt, or escape. This interpretation is consistent with the Model Penal Code's conception of robbery, the Official Commentary to KRS 515.020, and the plain language of the statute. Thus, if a defendant commits or attempts to commit a theft (obtains property of another with the intent to deprive the owner, KRS 513.010 *et seq.*) without using or threatening to use force against another,[3] and does so for the first time only in the escape phase, while still intending to accomplish the theft, the elements of robbery are met, as we held in *Mack*. The escape is still "in the course of committing theft." But, we are not at liberty to divorce that phrase from the remainder of the sentence. The statute could not be clearer on that point. As previously noted, it reads as follows:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, *he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft* . . . .

KRS 515.020; KRS 515.030. (Emphasis added) If the literal language of a statute is clear and unambiguous, it must be given effect as written. *Bailey v. Commonwealth*, 70 S.W.3d 414, 416 (Ky.2002).

If, at the time a defendant first uses or threatens force, he has abandoned his intention to accomplish a theft, the plain language of the robbery statutes constrains us to conclude that the elements of robbery are not met. The language admits to no interpretation other than that the force (or threat of force) be contemporaneous with an intent to accomplish the theft. It follows that once the intent to accomplish a theft is abandoned, any force used would not be for the purpose of accomplishing a theft, and, in the usual case would be for the unrelated purpose of effecting an escape. Under such circum-

---

**3.** For example, as in a shoplifting, or as was attempted here, by the fraudulent use of a credit card.

stances, the use of force to accomplish a theft element is simply not met. In *Williams,* and consequently in *Bumphis,* the Court of Appeals misconstrued the penal code commentary and misinterpreted the language of the robbery statute, and are accordingly, overruled. *Mack* represents a proper application of the law.

In the present case, it is undisputed that Appellant neither used, nor threatened to use, force against another until his struggle with Schoch in the parking lot after he fled the store. At that juncture, Appellant knew that his purpose had been foiled. The merchandise he intended to steal had long been left at the checkout counter. It is beyond doubt that the attempted theft had ended. It cannot be reasonably disputed that when Appellant fought with Schoch, he had no intention to "accomplish the theft," but, rather, was attempting to avoid arrest and prosecution.

Since Appellant's use of force against Schoch was not "with intent to accomplish the theft," the altercation cannot satisfy the physical force element of the statute, and a reasonable jury could not conclude otherwise. It follows that the conviction for first-degree robbery cannot be sustained. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991).

While an instruction was given on second-degree robbery, the definition of second-degree robbery contained in KRS 515.030(1) is identical to the language of KRS 515.020(1) as quoted above, except without the aggravating factors contained in KRS 515.020(1)(a)–(c). It follows by the same rationale, that a conviction under the second-degree robbery statute cannot be sustained under the facts of this case. No other lesser included offense instructions were given, and, thus, no theory of prosecution remains for retrial.

As stated above, *Williams* and *Bumphis,* were correct to the extent that they held that force used or threatened in the getaway, or escape, phase is still "in the course of committing theft." *Williams* and *Bumphis* erred in disconnecting that element from the requirement that the use or threat of force be done with the "intent to accomplish the theft." As in *Mack,* had Appellant held on to the merchandise instead of leaving it at the register, a jury might reasonably conclude that his use of force against the officer was as much to protect his hold on the stolen goods as to make good his escape. Thus, this decision does not hold that using or threatening to use force during the escape phase of a theft does not supply the ingredient that converts the theft into a robbery. We note further that the abandonment of the property would not negate a robbery conviction based upon the use of force or threat of force in an earlier phase of an attempted theft, so long as its use can reasonably be regarded as concurrent with intent to accomplish the theft. Lastly, we observe that this opinion does not mean that force used after the intent to accomplish a theft has dissolved must go unpunished. Other provisions of the penal code adequately cover such occurrences.

## CONCLUSION

For the foregoing reasons Appellant's conviction upon the charge of first-degree robbery is reversed and the case is remanded to the trial court for entry of judgment consistent with this opinion.

All sitting. All concur.