NOT DESIGNATED FOR PUBLICATION

No. 117,617

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM DANIEL TRAVIS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed July 27, 2018. Conviction affirmed, sentence vacated, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: In this appeal, William Daniel Travis contends the district court should not have sent him to prison to serve his sentence but should have imposed an intermediate sanction instead. He also argues that his sentence is illegal because the court incorrectly scored his 1988 Kentucky robbery conviction as a person felony. Travis is correct on both points. Because the court failed to set forth with particularity any reasons why Travis' welfare would not be served by imposing an intermediate sanction, we vacate Travis' sentence and remand for a new dispositional hearing. His criminal history

1

score is incorrect because of the improper scoring of the Kentucky robbery conviction. We order the court to impose a new sentence using a corrected criminal history score.

*Travis is no stranger to Kansas criminal courts.*

Travis violated the reporting law. Because of a conviction for selling a controlled substance, the law required Travis to register as a drug offender from 2008 to 2025. He had to renew this registration in October 2015 but failed to do so. And Travis had been evicted from his residence and failed to report this change of address.

These reporting failures came to the State's attention and the prosecutor charged Travis with failure to register under K.S.A. 2015 Supp. 22-4905. He pleaded guilty. The State, however, agreed to request a dispositional departure at sentencing to allow Travis to enter inpatient treatment with the Therapeutic Community. Without such an agreement, Travis was headed to prison. First, because, based on his crime and on his agreed criminal history score, his guideline sentence was a presumptive prison term. Second, since Travis committed this crime while on felony probation, any sentence he would receive would also be a presumptive prison term.

The court followed the State's recommendation and granted a dispositional departure. It sentenced him to 36 months in prison and placed him on probation for 24 months. This departure allowed Travis to attempt rehabilitation. The sentencing court told him that the Therapeutic Community program was good and if Travis could not handle the full program he would have to complete his prison sentence. Completing the Therapeutic Community program was then added as a condition of Travis' probation. The court ordered this sentence to be consecutive to a sentence arising from his conviction in Anderson County, Kansas.

2

This prior conviction in Anderson County was significant. The court made it clear that the Therapeutic Community would not take Travis if he had a detainer in another case. He needed to serve his time for the Anderson County case before he could begin his probation for the failure to report conviction. The court warned Travis, "[i]f you do get out in Anderson County, you know, if they don't bring you back here, you have to beat feet to get back here and get set up for your Therapeutic Community." Travis promised that when he was released from the sentence in Anderson County he would return to begin his treatment.

Events did not follow that path. When Travis was released from the Anderson County sentence he did not return to begin his treatment. The State moved to revoke Travis' probation.

At the hearing to revoke his probation, Travis stipulated to violating his probation by being released from Anderson County custody and not reporting to his treatment service. He told the court that he was a methamphetamine addict and asked the court to send him directly to rehab. Travis also suggested that he would not oppose any "shock time" the court would impose. The State asked the court to impose the prison sentence by arguing that Travis' welfare would not be served by imposing any intermediate jail sanction.

The district court ordered Travis to serve his prison sentence. The court made a vague, general finding about graduated sanctions:

> "Well, so, Mr. Travis, here I am. I am looking for reasons to help you here, but I don't know that I have any, all right? You have not responded to anything everybody has done. I know you're an addict, but I cannot reward the kind of behavior that you have exhibited here and all the breaks that you have been given. So I am inclined to go ahead and have you serve your sentence. You are a C. You've been through this before. It is not like you're a babe in the woods here. It was a presumptive prison case. You committed

3

the crime while under felony supervision. So you got a departure. You got a trip to the [Therapeutic Community]. A probation with a trip to the [Therapeutic Community]. All of those things, and you blew them up. I know maybe your addiction was part of the reason you did that but I can't in good conscience ignore all of that.

"I'm going to find that there—that the necessary criteria has been met not to give you a graduated sanction and that I'm going to order that you go serve your sentence."

*The law requires the court to at least consider an intermediate sanction.*

Travis stipulated to the probation violation for failing to report to Therapeutic Community following his release from Anderson County. With that, the only question remaining is whether the revocation of probation and imposition of the underlying sentence was appropriate. This is a question of law over which this court exercises unlimited review. See *State v. Sandberg*, 290 Kan. 980, 984, 235 P.3d 476 (2010).

While it is true that the decision to revoke probation based on a violation rests within the discretion of the district court, it is also true that discretion is limited by law. When imposing a sanction for a probation revocation, the district court must impose a series of graduated sanctions before imposing the underlying sanction. K.S.A. 2016 Supp. 22-3716(c)(1)(B)-(E). In some situations, a defendant's actions can permit the district court to impose the underlying sanctions without imposing the graduated sanctions. The underlying prison sentence may be imposed if the defendant absconds from probation, commits a new crime, or the district court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2016 Supp. 22-3716(c)(8)-(9).

Several panels of this court have interpreted the meaning of the phrase, "sets forth with particularity the reasons." To set forth with particularity means that the reasoning must be "'distinct rather than general, with exactitude of detail, especially in description

4

or stated with attention to or concern with details.' [Citation omitted.]" *State v. McFeeters*, 52 Kan. App. 2d 45, 48, 362 P.3d 603 (2015). When the statute requires particular findings, implicit findings cannot satisfy the statutory burden. *State v. Miller*, 32 Kan. App. 2d 1099, 1102-03, 95 P.3d 127 (2004). When imposing the underlying sentence, the district court "must explicitly address how the public's safety would be jeopardized or how the offender's welfare would not be served by imposition of the intermediate sanctions." *McFeeters*, 52 Kan. App. 2d at 49.

In turn, at the revocation hearing, the district court also considered:
- Travis' addiction;
- Travis' failure to report to the Therapeutic Community Program;
- Travis' criminal history score; and
- Travis was given a dispositional departure.

We note here, at most, an implicit finding that Travis' welfare would not be served by the imposition of an intermediate sanction. Certainly, that is what the State argued at the revocation hearing. At sentencing, the district court had explained to Travis that if he failed the Therapeutic Community program he would have to serve his prison sentence. Travis' failure to report to his Therapeutic Community program after being warned that failure of that program would lead to imposing the underlying sentence implies that Travis' welfare would not be served by imposing an intermediate sanction. But the district court made no particular finding connecting Travis' failure to report with how the imposition of an intermediate sanction would not serve his welfare. See *McFeeters*, 52 Kan. App. 2d at 48-49.

Because this finding is not particular enough to invoke the offender's welfare exception in K.S.A. 2016 Supp. 22-3716(c)(9), the district court made an error of law and is thus an abuse of its discretion. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Travis' sentence is vacated and the case is remanded to the district court for a new

5

dispositional hearing. On remand, the district court can either impose an intermediate sanction or set forth with particularity the reasons that Travis' welfare would not be served by imposing an intermediate sanction. See, e.g., *State v. Jackson*, No. 113,354, 2016 WL 2609638 at *6 (Kan. App. 2016) (unpublished opinion).

*Based on Supreme Court precedent, Travis' criminal history score is incorrect.*

Travis is raising his claim of miscalculation of his criminal history score for the first time on appeal. The State concedes that he may do so based on the ruling in *State v. Dickey*, 301 Kan. 1018, 1027, 350 P.3d 1054 (2015).

This is a question of law over which this court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Classification of prior offenses is set out in our Sentencing Guidelines Act, K.S.A. 21-6801 *et seq*. The calculation of an offender's criminal history score is controlled by K.S.A. 2015 Supp. 21-6811.

The statute provides that "Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history." K.S.A. 2015 Supp. 21-6811(e)(1). When classifying criminal history, a prior out-of-state conviction is classified as a felony or misdemeanor based on the classification of the convicting jurisdiction. K.S.A. 2015 Supp. 21-6811(e)(2). When the out-of-state conviction is a felony, it is counted as a felony in Kansas. K.S.A. 2015 Supp. 21-6811(e)(2)(A). Travis' out-of-state 1988 conviction was for a Kentucky robbery. Kentucky classified the offense as a felony, so the offense will be counted as a felony in Kansas. But the calculation does not stop there.

Next, the sentencing court must determine whether the felony is a person or nonperson offense. Usually this means comparable offenses will be treated comparably:

"The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime." K.S.A. 2015 Supp. 21-6811(e)(3).

A recent ruling by our Supreme Court has clarified the meaning of this subsection in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). Before *Wetrich,* panels of this court had used different standards for analyzing these types of cases. Some panels used a closest approximation test in which the offenses could be considered comparable offenses if the out-of-state statute and the Kansas statute prohibited similar conduct. See, e.g., *State v. Moore*, 52 Kan. App. 2d 799, 813-16, 377 P.3d 1162 (2016), *reversed* 307 Kan. 599 (2018). Other panels held that for the out-of-state offense to be used, the out-of-state statute must be identical to or narrower than the Kansas statute. See, e.g. *State v. Gonzalez*, No. 107,798, 2016 WL 299042, at *7 (Kan. App. 2016) (unpublished opinion). The Kansas Supreme Court in *Wetrich* reconciled this difference in caselaw.

Our Supreme Court has directed that for an offense to be considered a "comparable offense" under the meaning of the statute, the elements of the offense in the convicting jurisdiction must be identical to or narrower than the elements of the Kansas offense. *Wetrich*, 307 Kan. Syl. ¶ 3. Applying that ruling here, we have a simple question to answer: Are the elements of second degree-robbery in Kentucky—in effect in 1988—identical to or narrower than the elements of the Kansas robbery statute in effect in 2015?

Statutory history shows that Kentucky enacted its robbery statute in 1974 and has not amended the statute since that time. Second-degree robbery in Kentucky is defined as: "A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another

7

person with intent to accomplish the theft." *Williams v. Commonwealth*, 721 S.W.2d 710, 711 (Ky. 1986); Ky. Rev. Stat. Ann. § 515.030.

The elements of robbery in Kansas in 2015 are set out in K.S.A. 2015 Supp. 21-5420. That statute defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person."

The chart below shows the elements of both robbery statutes:

| Elements of Kentucky Second-Degree Robbery | Elements of Kansas Robbery |
|---|---|
| Uses or threatens the immediate use of Physical force Upon another person In the course of committing a theft Intending to accomplish the theft | Knowingly takes property From a person or in the presence of another By force or threat of bodily harm to another |

Travis argues that the Kentucky statute is broader than the Kansas statute because Kansas requires a threat of bodily harm when the Kentucky statute requires only a threat of force. He points out that all threats of bodily harm involve threats of force, but not all threats of force involve threats of bodily harm.

This argument is based on Kansas caselaw that distinguishes bodily harm from great bodily harm. See *State v. Bryant*, 22 Kan. App. 2d 732, 922 P.2d 118 (1996). For aggravated robbery, bodily harm does not include trivial injuries and minor marks that would occur from any simple robbery. 22 Kan. App. 2d at 735. Travis argues that for there to be a threat of bodily harm for simple robbery, the threat must be more than a threat of physical force that is required by the Kentucky statute. The State does not

8

specifically address this argument. Instead, it argues the two robbery offenses are comparable under the prior standard overruled by *Wetrich*.

We follow a different path than those suggested by either Travis or the State. It seems to us that based on the elements, the Kentucky law is broader. First, under the Kentucky statute, violence after a taking has occurred can, in some factual situations, be enough to establish a robbery. In Kansas, the violence must proceed or be contemporaneous with a taking to constitute a robbery. Second, Kansas law requires that the taking be from a person or from within a person's presence. Kentucky has no personal presence requirement. Based on these elements, the Kentucky statute is broader than the Kansas statute and cannot be used as a comparable offense under K.S.A. 2015 Supp. 21-6811(e)(3). See *Wetrich*, 307 Kan. at 558-61.

Both differences rest on two phrases within the Kentucky statute—"in the course of committing theft" and "with intent to accomplish the theft." Ky. Rev. Stat. Ann. § 515.030. Under the Kentucky statute, a person can take property without the use of force but be convicted of robbery based on using force to accomplish an escape. Under the Kentucky statute:

> "if a defendant commits or attempts to commit a theft (obtains property of another with intent to deprive the owner, KRS 513.010 *et seq.*) without using or threatening to use force against another, and does so for the first time only in the escape phase, while still intending to accomplish the theft, the elements of robbery are met." *Hobson v. Commonwealth*, 306 S. W. 3d 478, 482 (Ky. 2010).

A similar interpretation of the Kentucky statute was valid caselaw when Travis was convicted of second-degree robbery. See, e.g. *Williams v. Commonwealth*, 639 S.W. 2d 786, 788 (Ky. App. 1982) *overruled by Hobson*, 306 S.W. 3d at 482.

9

In contrast, cases interpreting our robbery statute specifically prohibit finding a robbery occurred when force is only used to accomplish an escape. It is well settled in Kansas that the violence must precede or be contemporaneous with the taking of the property:

> "to constitute the crime of robbery . . . it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape." *State v. Aldershof*, 220 Kan. 798, 803, 556 P.2d 371 (1976).

Thus, since the Kentucky statute permits a robbery to occur when violence is used for the first time during an escape, and Kansas law prohibits a finding that robbery occurs when violence is only used in the escape, we hold the elements of the Kentucky statute are broader than the Kansas statute. In other words, more actions are criminalized by the Kentucky statute. This difference alone is fatal to the State's position that Travis' criminal history score is correctly calculated.

Additionally, the Kentucky statute is broader than the Kansas statute because it does not require that the taking of the property to be from a person or from the presence of a person—an element of robbery in Kansas. See *State v. Brown*, 306 Kan. 1145, 1158-59, 401 P.3d 611 (2017). In Kentucky, the phrase "in the course of committing a theft" includes takings that are not from a person or in a person's presence. *Hobson* is a good example of the differences between these two statutes.

In *Hobson,* the defendant broke into another person's vehicle and stole a driving license, several credit cards, and various other unidentified items. The defendant eventually traveled to Walmart with the stolen cards and placed items in his cart. When the defendant tried to check out, the cashier believed the cards had been stolen and delayed the purchase. A police officer intervened in the situation. While the officer was

10

contacting the owner of the stolen credit cards, the defendant fled. He had left the stolen card and merchandise at the checkout counter. The officer eventually caught the defendant and a scuffle ensued. 306 S.W. 3d at 478-79.

The Kentucky Supreme Court was asked to determine if these facts constituted a robbery. The court determined that no robbery occurred because the scuffle happened after the defendant had abandoned the intent to steal the items. 306 S.W. 3d at 482-83. In Kansas, this could not be considered a robbery because the element that the taking be from a person or presence of another cannot be met when the only taking was the items from the unoccupied vehicle and merchandise from Walmart. Because the Kentucky statute allows robberies to occur without a taking from a person or the presence of another, the elements of the Kentucky statute are broader than the elements of the Kansas statute.

The Kentucky statute is not identical to or narrower than the Kansas statute; thus, it does not constitute a "comparable offense" under the meaning of K.S.A. 2015 Supp. 21-6811(e)(3). Because it is not a comparable offense, Travis' Kentucky robbery conviction cannot be considered a person felony for calculation of criminal history. Since this was his only person felony conviction, if it was properly classified as a nonperson felony, he has six nonperson felonies. Because there are only nonperson felonies, the district court must resentence Travis according to his proper criminal history score.

We vacate Travis' sentence and remand with directions for the court to hold a new dispositional hearing and impose a new sentence. The district court is to resentence Travis after scoring his 1988 Kentucky robbery conviction as a nonperson felony. At the new dispositional hearing, the district court can either impose an intermediate sanction or set forth with particularity the reasons that Travis' welfare would not be served by imposing an intermediate sanction.

11

Conviction affirmed, sentence vacated, and remanded with directions.