# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  AUGUST 18, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0573-MR

VINCENT BERNARD FICKLIN                                          APPELLANT


ON APPEAL FROM WARREN CIRCUIT COURT
V.                   HONORABLE JOHN GRISE, JUDGE
NO. 17-CR-00479


COMMONWEALTH OF KENTUCKY                              APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Vincent Ficklin appeals his conviction for the murder and first-degree robbery of Tim Massey.  He claims the trial court erred (1) by denying his motion in limine to exclude the testimony or limit the conclusions of the firearm examiner and (2) by failing to grant a directed verdict on the first-degree robbery charge.  Upon review, we affirm the Warren Circuit Court's judgment.

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

Massey was killed early in the morning of February 10, 2017, in a house in Bowling Green, Kentucky, which Massey and others used to sell drugs.  A Warren County jury found Ficklin guilty of intentionally murdering Massey by shooting him and of the first-degree robbery of Massey.  The robbery charge

stemmed from Ficklin also stealing Massey's Ford Expedition, later found abandoned in Alabama. The Commonwealth presented multiple witnesses' testimony in support of Ficklin's guilt. The witnesses' testimony, corroborated by GPS data from Massey's vehicle, cell phone tower data from Ficklin's phone, and security footage from nearby businesses, provided a timeline for Ficklin's whereabouts on the night of February 9, 2017, up through his arrival in Alabama on February 10 driving Massey's vehicle.

One witness testified that he was in the house with Ficklin and Massey and that he had gone to a bedroom to rest. The witness saw Ficklin walk past the bedroom and shortly afterward heard a loud noise in the kitchen, followed by the sound of the front door closing. The witness went into the kitchen and found Massey shot in the head. The witness then saw Massey's vehicle pull out of the driveway. Ficklin was gone. Police recovered a 9mm shell casing near Massey's body.

A second witness testified that he was in Franklin, Kentucky, near the American Legion Hall on the night of February 9, 2017, when he was approached by Ficklin about a drug debt. This witness testified that someone shot at him and upon retreating to his vehicle, the witness saw Ficklin up the street. A third witness saw Ficklin on the Franklin street just before the shots rang out. Police also recovered shell casings from the Franklin shooting scene.

The Commonwealth submitted the shell casings from the two crime scenes to the Kentucky State Police lab for comparison. Ficklin moved pretrial to exclude or to limit the firearm and toolmark examiner's testimony. The

2

motion was denied.  The examiner testified that he compared the shell casings and determined that they had been fired from the same gun.

At the close of the Commonwealth's case and of all the proof, Ficklin moved for a directed verdict on the robbery charge.[1]  The trial court denied both motions.

Upon finding Ficklin guilty, the jury recommended the maximum sentence for each crime, fifty years for the murder and twenty years for the robbery, and that the sentences run consecutively.  The trial court, following the jury's recommendation, sentenced Ficklin to seventy years in prison.

Ficklin raises two arguments on appeal.  These claims are addressed in turn.

### ANALYSIS

### I.  The Trial Court Did Not Err by Denying the Motion in Limine.

Ficklin moved to exclude the firearm examiner's testimony or limit the testimony so that the examiner did not convey to the jury that he was able to determine with "certainty" that the casings from Massey's shooting and the Franklin shooting were fired from one particular firearm.  Ficklin, citing the 2009 National Research Council's report titled *Strengthening Forensic Science in the United States* (NRC Report) and the President's Council of Advisors on Science and Technology report titled *Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods* (PCAST Report),

---

[1] Ficklin also moved for a directed verdict on the murder charge, but the trial court's denial of that motion was not appealed.

3

argued that the analysis performed by the firearm examiner is no longer deemed scientifically reliable. Criticism of firearm examination includes no definite guidelines or standards for examination, reliance on subjective rather than objective analysis, and no scientific validity to the assertion that any specific firearm produces unique identifiable markings. Prior to trial, the trial court conducted a *Daubert*[2] hearing as to the firearm examiner's qualifications and experience.

The firearm examiner explained the process the Kentucky State Police Forensic Laboratory uses to determine whether two shell casings were likely fired from the same gun, a process which involves the examiner's subjective analysis. The examiner looks at the shell casings through a comparison microscope to identify individual characteristics caused by the firing process. Under the Association of Firearm and Toolmark Examiners (AFTE) guidelines,[3] the examiner should comparatively examine the two casings' surface contour patterns. If the examiner, based upon his experience and training, finds "significant agreement" between corresponding individual characteristics on both casings that "significant agreement" supports the conclusion that the casings were discharged from the same firearm.

---

[2] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

[3] The PCAST Report examined a 2011 AFTE journal article and scrutinized the examiner's subjective conclusions.

The examiner also testified to the scientific reliability of the process. The Kentucky State Police Forensic Laboratory is accredited by the ANAB[4] to perform firearm and toolmark analysis. The examiner stated that the analysis is supported by over 100 years of research and that peer review studies and research papers had found that firearm and toolmark examination had an error rate of near zero percent. The examiner testified that although the Kentucky State Police Forensic Laboratory established protocols for its comparative analysis, AFTE had not created uniform standards to be employed in every laboratory.

A number of factors derived from *Daubert* are recognized as helpful to the trial court when determining whether the expert's testimony rests on a reliable foundation before allowing its admission. *Futrell v. Commonwealth*, 471 S.W.3d 258, 282 (Ky. 2015). "These [factors] include whether the principle, theory, or method in question 'can be (and has been) tested,' whether it 'has been subjected to peer review and publication,' whether it has a 'known or potential rate of error,' and whether it enjoys acceptance within 'a relevant scientific community.'" *Id.* (quoting *Daubert*, 509 U.S. at 593-94). Here, the trial court found a sufficient scientific basis for the jury to consider the firearm examiner's testimony. The trial court ruled that any weaknesses of the approach, including its methodology and reliability, could be presented through the cross-examination of the Commonwealth's firearm examiner or

---

[4] ANSI (American National Standards Institute) National Accreditation Board (ANAB).

examination of an expert for Ficklin. The trial court further concluded that the firearm examiner could express his opinions "to a reasonable degree of scientific certainty" or "reasonable degree of certainty in the field of firearm and toolmark identification."

At trial, the firearm examiner testified that he microscopically compared the shell casing found near the scene of the Franklin shooting to the casing found near Massey's body. The examiner found significant agreement of individual characteristics observed in the breech markings. Accordingly, he identified the shell casings as having been fired from the same unknown firearm.

In *Garrett v. Commonwealth*, 534 S.W.3d 217 (Ky. 2017), this Court recently concluded that a trial court did not err by allowing a firearm examiner to testify that she examined two bullets from two murder scenes visually and microscopically and made the determination that they were fired from the same firearm. Like in this case, a *Daubert* hearing was held. Garrett primarily relied on the NRC Report, which calls into question the validity of the assumptions about toolmarks that underlie firearms identification. *Id.* at 222. This Court considered the trial court's application of the *Daubert* factors to Garrett's arguments and *United States v. Otero*, 849 F. Supp. 2d 425 (D.N.J. 2012), *aff'd* 557 Fed. Appx. 146 (3rd Cir. 2014), which addresses *Daubert* arguments similar to Garrett's. *Otero* recognized that the AFTE theory of identification contains a subjective component in determining "sufficient agreement" which "must necessarily be based on the examiner's training and experience." *Id.* at

6

432. The *Otero* court found that "the AFTE theory is testable and has been tested." *Id.* Acknowledging the NRC Report's criticisms, the *Otero* court found that while the toolmark identification procedures "do indeed involve some degree of subjective analysis and reliance upon the expertise and experience of the examiner" the methodology is reliable. *Id.* at 438.

Ficklin seeks to persuade this Court that *Daubert* is not satisfied and his argument in part is that we must reconsider *Garrett* because *Otero*'s analysis is flawed. However, as the trial court in this case pointed out at the pretrial hearing, it did not consider *Garrett* dispositive of whether a firearm examiner may testify at trial about the examination of the shell casings and the conclusions from that examination. Rather, the trial court's role is to rule on the evidence presented whether *Daubert* is satisfied and if so, to exercise discretion as to whether the expert's testimony may be admitted at trial. *Garrett*, 534 S.W.3d at 221. Ficklin himself made this point during the pretrial hearing.

At the pretrial hearing, Ficklin's arguments mirrored those presented in *Garrett*. After hearing the expert's testimony, the trial court acknowledged that controversy exists in regard to the firearm and toolmark examination assumptions and methodology, but that controversy did not preclude finding that the testimony was admissible under *Daubert*. Consequently, based upon the expert's testimony, the trial court concluded the firearm examiner's testimony could be admitted and the defense could expose at trial the weaknesses of the firearm and toolmark examination.

7

Ficklin argues before this Court that the *Garrett* decision missed the mark and accepted too much at face value from the firearm examiner community. Quoting *Meskimen v. Commonwealth*, 435 S.W.3d 526, 535-36 (Ky. 2013), a hair comparison case in which a *Daubert* hearing was not held because the trial court took judicial notice that hair comparison evidence is scientifically reliable, *id.* at 534-35, Ficklin points out that "what is scientifically acceptable today may be found to be incorrect or obsolete in the future" and "even though caselaw may be in acceptance of a certain method of analysis, it is the trial court's duty to ensure that method is supported by scientific findings, or at least not seriously questioned by recent reputable scientific findings, before taking judicial notice of its acceptability." Ficklin contends that the trial court's acceptance of the firearm examiner's testimony was clear error. Stated another way, Ficklin contends that substantial evidence did not support the trial court's findings of fact at the *Daubert* hearing. *Garrett*, 534 S.W.3d at 221.

Even though this is not a case in which the trial court took judicial notice of the shell case examination technique as reliable, we view the *Daubert* hearing in this case as not being at odds with *Meskimen*'s guidance. As discussed above, when conducting the *Daubert* hearing, the trial court explained that it did not consider *Garrett* dispositive, but rather heard testimony and made its ruling based upon the evidence presented. In short, it took a fresh look at the issue. Upon review of the hearing testimony, we

8

conclude the trial court did not clearly err when ruling that the expert's testimony satisfied *Daubert* and was admissible at trial. *Id.*

Ficklin also argues that the trial court erred by not requiring the firearm examiner to conform his testimony to the scientifically defensible position contained in the 2009 NRC Report: that the cartridges displayed similarities and could not be excluded as having been fired from the same firearm. Ficklin does not explain how the accepted "reasonable degree of scientific certainty" standard differs from the requested language and prejudices him. Regardless, even though the firearm examiner did not express his opinion in terms of a "reasonable degree of scientific certainty" in compliance with the trial court's ruling, Ficklin did not object to the firearm examiner's testimony that he concluded the two cartridges came from the same unknown firearm. This specific claim of error regarding how the firearm examiner phrased his conclusion is not preserved for this Court's review.

## II. The Trial Court Did Not Err by Denying a Directed Verdict.

Ficklin's second and final claim is that the trial court erred by denying his motion for a directed verdict on the first-degree robbery charge. Pertinently, the Commonwealth's burden was to prove that in the course of committing theft, Ficklin used or threatened the immediate use of physical force upon Massey with intent to accomplish the theft and when he did so, Ficklin was armed with a deadly weapon. Kentucky Revised Statute (KRS)

515.020(1).[5]  At the close of the Commonwealth's proof, Ficklin moved for a directed verdict on the basis that the Commonwealth did not produce sufficient evidence to prove that Ficklin used physical force against Massey and that Ficklin stole Massey's truck.  At the close of evidence, Ficklin renewed the motion with the general statement that the Commonwealth had not met its burden beyond a reasonable doubt.

In order to preserve a directed verdict issue for appellate review, the defendant must identify the particular element(s) of that charge the Commonwealth failed to prove.  *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).  Here, in support of his appellate argument, Ficklin concedes that the evidence was sufficient for a jury to find that Ficklin shot Massey and that thereafter Ficklin stole Massey's truck.  However, he argues that there was no evidence to prove that it was Ficklin's intent when he shot Massey to do so in order to steal Massey's truck.  Ficklin seeks palpable error review if this Court agrees with the Commonwealth that Ficklin's "intent" argument is not preserved.

Under Kentucky Rule of Criminal Procedure (RCr) 10.26, if an unpreserved error is found to be palpable and if it affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error.  An error is palpable when it is "easily

---

[5] The first-degree robbery instruction findings were pertinently: 1) Ficklin stole a vehicle from Massey; 2) in the course of doing so and with the intent to accomplish the theft, he used, or threatened the immediate use of, physical force upon Massey; and 3) that when he did so, he was armed with a deadly weapon.

perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). The error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). Ficklin contends that a conviction without sufficient evidence is a violation of due process, and therefore necessarily palpable error.

As noted above, Ficklin asserts that the Commonwealth adduced no evidence to prove that it was his intent when he shot Massey to do so in order to steal Massey's truck. Ficklin points to the testimony he elicited from one of the Commonwealth's witnesses about Ficklin's motive for the shooting—that Ficklin may have believed Massey to be a police informant—as evidence of his intent to shoot and kill Massey. Ficklin nevertheless argues that he also had another intent, the intent to steal Massey's truck for the unrelated purpose of effecting an escape.

Ficklin cites *Hobson v. Commonwealth*, 306 S.W.3d 478, 482 (Ky. 2010), as an example of when a threat or use of force is distinct from the commission of a theft, the elements of robbery are not met, the statute requiring that the use of force or threat of force be contemporaneous with an intent to accomplish the theft. With it being undisputed in *Hobson* that the defendant neither used, nor threatened to use, force against another until after the defendant fled the store, abandoning the merchandise he had intended to steal at the checkout counter, this Court concluded the defendant was entitled to a directed verdict on the first-degree robbery charge because the defendant's use of force was not

11

"with intent to accomplish the theft" and a reasonable jury could not conclude otherwise. *Id.* at 483. Here, the facts are unlike those in *Hobson* because the use of force occurred and then the theft of the vehicle occurred. As addressed in *Hobson,* the underlying question is whether there was sufficient evidence from which the jury could find at the time of the use of force the defendant had a contemporaneous intent to rob.[6]

"[A] person is presumed to intend the logical and probable consequences of his conduct and 'a person's state of mind may be inferred from actions preceding and following the charged offense.'" *Parker v. Commonwealth*, 952 S.W.2d 209, 212 (Ky. 1997).

> In assessing evidence as to sufficient proof of intent in criminal cases, the requisite intent may be determined from surrounding circumstances. All elements of a crime, including intent, can be proven by circumstantial evidence. Hardly is the Commonwealth ever fortunate enough to present direct proof as to the thought process in a defendant's mind.

*Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012) (internal citations omitted). "The jury has wide latitude in inferring intent from the evidence."

---

[6] As part of its argument that the trial court properly denied the directed verdict, the Commonwealth cites *Ray v. Commonwealth*, 611 S.W.3d 250, 267 (Ky. 2020), for the premise that the offense of first-degree robbery is committed even when the robber decides to steal the property after he kills the victim, so long as the theft and the murder are part of the same criminal episode. Ficklin disagrees that *Ray* stands for that proposition but nevertheless argues that *Ray* and *Bowling v. Commonwealth*, 942 S.W.2d 293 (Ky. 1997), which *Ray* cites, are cases which stand in direct contrast to KRS 515.020's requirement that at the time the force is used, the perpetrator must have formed the intent to commit the theft. We find *Ray* factually distinguishable and we need not and do not consider Ficklin's assertion that *Ray* perpetuated an error made in *Bowling.*

*Anastasi v. Commonwealth,* 754 S.W.2d 860, 862 (Ky. 1988) (citing *Rayburn v. Commonwealth*, 476 S.W.2d 187 (Ky. 1972)).

"When presented with a motion for a directed verdict, a court must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187-88 (Ky. 1991)). A trial court should deny a directed verdict when the "Commonwealth has produced . . . more than a scintilla [of evidence] and it would be reasonable for the jury to return a verdict of guilty based on it." *Id.* "On appellate review, the standard is slightly more deferential; the trial court should be reversed only if 'it would be *clearly unreasonable* for a jury to find guilt.'" *Id.* Here, the evidence included that upon shooting Massey, Ficklin immediately stole Massey's vehicle. It was not clearly unreasonable for the jury to find that Ficklin had the intent to steal Massey's vehicle at the time he shot Massey. The trial court did not err by refusing to grant Ficklin's motion for a directed verdict of acquittal.

## CONCLUSION

For the foregoing reasons, the Warren Circuit Court's judgment is affirmed.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Lee Baldridge
Assistant Attorney General

14